**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MICHAEL GRAUER,                                        :
                                                       :
                                  Plaintiff,           :        07 Civ. 5450 (LAP)
                                                       :
                        - against -                    :        **ANSWER, COUNTERCLAIMS**
                                                       :        **AND DEMAND FOR JURY**
                                                       :        **TRIAL**
UBS FINANCIAL SERVICES, INC.,                          :
THOMAS REICHERT, and BARRY CONNELL,                    :
                                                       :
                                  Defendants.          :
-----------------------------------------------------------X

Defendants UBS FINANCIAL SERVICES INC. ("UBSFS"), THOMAS REICHERT,

and BARRY CONNELL, by and through their undersigned attorneys, Thompson Wigdor &

Gilly LLP, answer the Amended Complaint ("Amended Complaint") in the above-captioned

matter by admitting, denying, and averring as follows:

### NATURE OF COMPLAINT

1.      Deny each of the averments contained in paragraph 1 of the Amended Complaint,

except admit that Plaintiff purports to bring this action pursuant to the Age Discrimination in

Employment Act, which is incorrectly cited in the Amended Complaint as 19 U.S.C. § 623, et

seq., and the New York Executive Law §§ 290, et seq.

### JURISDICTION AND VENUE

2.      Deny each of the averments contained in paragraph 2 of the Amended Complaint,

except admit that Plaintiff purports to invoke the Court's jurisdiction as alleged therein.

3.      Deny each of the averments contained in paragraph 3 of the Amended Complaint,

except admit that Plaintiff purports to invoke the Court's jurisdiction as alleged therein.

4.      Deny each of the averments contained in paragraph 4 of the Amended Complaint,

except admit that Plaintiff purports to invoke the Court's jurisdiction as alleged therein.

5.      Deny each of the averments contained in paragraph 5 of the Amended Complaint, except admit that Plaintiff purports to invoke venue in the Southern District of New York as alleged therein.

## PARTIES

6.      Deny having knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 6 of the Amended Complaint, except admit that Plaintiff was employed as a Financial Advisor by UBSFS from May 1998 until July 24, 2006, and that he worked out of the UBSFS branch office located at 1 Bluehill Plaza, Pearl River, Rockland County, New York (the "Pearl River Branch").

7.      Deny each of the averments contained in paragraph 7 of the Amended Complaint, except admit that UBSFS maintains corporate headquarters at 1200 Harbor Boulevard, Weehawken, New Jersey, and state that the allegations that "UBS was an employer engaged in interstate commerce, employing more than twenty (20) persons," constitutes legal argument and conclusions to which no responsive pleading is required.

8.      Deny each of the averments contained in paragraph 8 of the Amended Complaint, except admit that Thomas Reichert resides in Upper Saddle River, New Jersey and is employed by UBSFS as Branch Office Manager of the Pearl River Branch, and state that the allegation that "Reichert was Plaintiff's supervisor" constitutes legal argument and conclusion to which no responsive pleading is required.

9.      Deny each of the averments contained in paragraph 9 of the Amended Complaint, except admit that Barry Connell resides in Chester, New Jersey and is a Financial Advisor at UBSFS at the Pearl River Branch, and state that the allegation that "he was Plaintiff's business

partner" constitutes legal argument and conclusion to which no responsive pleading is required.

## ADMINISTRATIVE PROCEEDING

10.    Deny having knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 10 of the Amended Complaint.

## STATEMENT OF THE CASE

11.    Deny having knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 11 of the Amended Complaint, except deny that Plaintiff had an impeccable record.

12.    Deny each of the averments contained in paragraph 12 of the Amended Complaint, except admit that Plaintiff was hired by UBSFS as a Financial Advisor in May 1998.

13.    Deny each of the averments contained in paragraph 13, except state that the allegation that "[i]n 2000, Plaintiff partnered with Connell" constitutes legal argument and conclusions to which no responsive pleading is required.

14.    Deny each of the averments contained in paragraph 14 of the Amended Complaint.

15.    Deny having knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 15 of the Amended Complaint.

16.    Deny each of the averments contained in paragraph 16 of the Amended Complaint, except deny having knowledge or information sufficient to form a belief as to the truth of the averment that "[s]tarting [sic] January 2006 Connell and Plaintiff initiated conversations with Morgan Stanley . . . about possibly moving to that firm."

17.    Deny each of the averments contained in paragraph 17 of the Amended Complaint.

18.    Deny the averments contained in paragraph 18 of the Amended Complaint, except admit that on May 31, 2006, Plaintiff was called into a meeting with Reichert and Caroline Hall, Esq. and a third person.

19.    Deny each of the averments contained in paragraph 19 of the Amended Complaint.

20.    Deny each of the averments contained in paragraph 20 of the Amended Complaint, except state that whether Larry McNeill was a "third partner" constitutes legal argument and conclusion to which no responsive pleading is required.

21.    Deny each of the averments contained in paragraph 21 of the Amended Complaint.

22.    Deny each of the averments contained in paragraph 22 of the Amended Complaint.

23.    Deny each of the averments contained in paragraph 23 of the Amended Complaint, except admit that the form U-5 submitted to the NASD for Plaintiff stated that "[n]o customers have made any complaints."

24.    Deny each of the averments contained in paragraph 24 of the Amended Complaint, except deny having knowledge or information sufficient to form a belief as to the truth of the averment that "Plaintiff was unemployed for the next 3 ½ months."

25.    Deny each of the averments contained in paragraph 25 of the Amended Complaint.

26.    Deny each of the averments contained in paragraph 26 of the Amended Complaint, except deny having knowledge or information sufficient to form a belief as to the truth of the averment that "[i]n November, 2006 Plaintiff was hired by Ryan Beck & Co."

27.     Deny each of the averments contained in paragraph 27 of the Amended Complaint.

28.     Deny each of the averments contained in paragraph 28 of the Amended Complaint.

29.     Deny each of the averments contained in paragraph 29 of the Amended Complaint.

30.     Deny each of the averments contained in paragraph 30 of the Amended Complaint.

## FIRST CAUSE OF ACTION

31.     Repeat and reallege all responses to the averments set forth in paragraphs 1 through 30 of the Amended Complaint as if they were fully set forth herein.

32.     Deny each of the averments contained in paragraph 32 of the Amended Complaint.

33.     Deny each of the averments contained in paragraph 33 of the Amended Complaint.

## SECOND CAUSE OF ACTION

34.     Repeat and reallege all responses to the averments set forth in paragraphs 1 through 33 of the Amended Complaint as if they were fully set forth herein.

35.     Deny each of the averments contained in paragraph 35 of the Amended Complaint.

36.     Deny each of the averments contained in paragraph 36 of the Amended Complaint.

## PRAYER FOR RELIEF

37.     Deny that Plaintiff is entitled to any of the relief requested in paragraph (a) of the Prayer for Relief or to any relief whatsoever, and further deny that Plaintiff has been damaged by the acts of Defendants in any amount.

38.     Deny that Plaintiff is entitled to any of the relief requested in paragraph (b) of the Prayer for Relief or to any relief whatsoever, and further deny that Plaintiff has been damaged by the acts of Defendants in any amount.

39.     Deny that Plaintiff is entitled to any of the relief requested in paragraph (c) of the Prayer for Relief or to any relief whatsoever, and further deny that Plaintiff has been damaged by the acts of Defendants in any amount.

40.     Deny that Plaintiff is entitled to any of the relief requested in paragraph (d) of the Prayer for Relief or to any relief whatsoever, and further deny that Plaintiff has been damaged by the acts of Defendants in any amount.

41.     Deny that Plaintiff is entitled to any of the relief requested in paragraph (e) of the Prayer for Relief or to any relief whatsoever, and further deny that Plaintiff has been damaged by the acts of Defendants in any amount.

42.     Deny that Plaintiff is entitled to any of the relief requested in paragraph (f) of the Prayer for Relief or to any relief whatsoever, and further deny that Plaintiff has been damaged by the acts of Defendants in any amount.

43.     Deny that Plaintiff is entitled to a jury trial on all actions in this case as requested in paragraph (g) of the Prayer for Relief.

**FIRST DEFENSE**

44.     The Amended Complaint fails to state a cause of action upon which relief can be granted.

**SECOND DEFENSE**

45.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

**THIRD DEFENSE**

46.     All actions taken by Defendants with respect to Plaintiff were based on legitimate, non-discriminatory, business reasons and were made in good faith compliance with all applicable laws, without malice, and wholly without regard to Plaintiff's age.

**FOURTH DEFENSE**

47.     Plaintiff's age was not a motivating or determining factor in any actions taken by Defendants with respect to Plaintiff.

**FIFTH DEFENSE**

48.     Plaintiff's right to recovery on his claims is barred or limited to the extent that he engaged in conduct that would have resulted in UBSFS' refusal to hire him and/or in the termination of his employment.

**SIXTH DEFENSE**

49.     If Plaintiff suffered any economic injury as the result of Defendants' actions, although such is denied hereby and herein, Plaintiff had a duty to mitigate damages, and, upon information and belief, failed to do so.

## SEVENTH DEFENSE

50.    If Defendants did injure Plaintiff as alleged, although such is denied hereby and herein, Plaintiff cannot demonstrate facts sufficient to warrant compensatory, liquidated, or exemplary damages.

## EIGHTH DEFENSE

51.    If Defendants engaged in any of the unlawful acts alleged in the Amended Complaint, although such is denied hereby and herein, then they did not engage in such acts intentionally, with malice and/or reckless indifference to Plaintiff's protected rights.

## NINTH DEFENSE

52.    Even if Defendants' actions towards Plaintiff were motivated, in whole or in part, by an impermissible discriminatory or retaliatory reason, although such is denied hereby and herein, Defendants will demonstrate that they would have taken the same actions towards Plaintiff in any event for reasons unrelated to Plaintiff's age.

## TENTH DEFENSE

53.    Any alleged harm that may be suffered by Plaintiff has not been caused by Defendants.

## ELEVENTH DEFENSE

54.    Plaintiff has not suffered any damages.

## TWELFTH DEFENSE

55.    Plaintiff's claims are barred by the doctrine of unclean hands.

## THIRTEENTH DEFENSE

56.    Assuming that Plaintiff experienced any discriminatory or retaliatory behavior

based on his age (which Defendants vigorously deny), Plaintiff unreasonably failed to take advantage of preventive and/or corrective opportunities provided by Defendants and, accordingly, are barred in whole or in part from recovering damages from Defendants.

### FOURTEENTH DEFENSE

57.    Assuming that Plaintiff experienced any discriminatory or retaliatory behavior based on his age, although such is denied hereby and herein, Defendants exercised reasonable care to prevent and/or correct promptly any such behavior.

### FIFTEENTH DEFENSE

58.    Plaintiff's claims for damages for physical, mental, or emotional injury are barred, in whole or in part, by the exclusivity of remedies provisions of the New York Workers' Compensation Laws.

### SIXTEENTH DEFENSE

59.    Plaintiff's claims are frivolous, unreasonable, and groundless and, accordingly, Defendants should recover all costs and attorneys' fees incurred herein.

### SEVENTEENTH DEFENSE

60.    Defendants reserve the right to raise any and all defenses that may become evident during discovery or during any other proceeding in this action.

### EIGHTEENTH DEFENSE

61.    As a matter of law, Plaintiff may not seek individual liability as against Defendants Thomas Reichert and Barry Connell under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

### NINETEENTH DEFENSE

62.    Plaintiff is not entitled to a trial by jury in connection with the demands for

equitable relief including, but not limited to, any claims for back pay or front pay.

## TWENTIETH DEFENSE

63.    Plaintiff willfully and voluntarily resigned from his position at UBS.

**WHEREFORE**, Defendants UBS Financial Services Inc., Thomas Reichert and Barry Connell demand judgment as follows:

A.    Dismissing the Amended Complaint in its entirety with prejudice;

B.    Granting Defendants their costs, disbursements, and attorneys' fees incurred in this action; and

C.    Granting such other and further relief as the Court deems just and proper.

\*    \*    \*

## COUNTERCLAIMS

Defendants-Counterclaim Plaintiffs UBS Financial Services Inc. ("UBSFS"), Thomas Reichert ("Reichert") and Barry Connell ("Connell") (collectively, "Counterclaim Plaintiffs"), by their undersigned attorneys, Thompson Wigdor & Gilly LLP, hereby allege and assert their counterclaims against Plaintiff-Counterclaim Defendant Michael B. Grauer ("Grauer"), and state as follows:

## NATURE OF COUNTERCLAIMS

1.      On or about July 24, 2006, Grauer voluntarily resigned his employment as a Financial Advisor at UBSFS.

2.      During Grauer's employment with UBSFS, he violated several SEC, NASD, NYSE and other SRO rules, regulations and policies, as well as internal UBS policies, procedures and requirements.

3.      By way of example only, beginning in or around March or April 2006, UBSFS discovered that Grauer had mismarked client order tickets as "unsolicited," when, in fact, such orders were "solicited," in violation of internal compliance policies, as well as SEC regulations.

4.      Specifically, Grauer intentionally mismarked certain client trade orders as "unsolicited," despite the fact that he solicited such clients to purchase those securities. The egregious nature of Grauer's misconduct was magnified by the fact that many of these solicited transactions included low-priced securities that Grauer maintained in his own personal investment accounts.

5.      In addition to mismarking several client tickets, Grauer also engaged in unauthorized discretionary trading in violation of SEC, NYSE and NASD rules, as well as internal UBSFS policy. In particular, Grauer bought and sold securities for his client accounts

without speaking to his clients and obtaining their specific authorization to place the trades prior to doing so.

6.    Financial Advisors at UBSFS are required to speak directly to their clients and obtain specific consent for each transaction prior to entering any order. Despite these explicit policies, on numerous separate occasions, Grauer exercised his own investment discretion in client accounts, without communicating with such clients about the specific transactions before he made the trades.

7.    In or about June 2006, Grauer was placed on paid administrative leave, pending UBSFS' investigation into his unlawful trading practices.

8.    The client orders of all of the Financial Advisors in the Pearl River Branch, including, but not limited to, Connell and Larry McNeill, both of whom are over 40 years old, were reviewed, and revealed no evidence of mismarked client order tickets or unauthorized client trades.

9.    During the internal investigation of Grauer's numerous violations of internal, SEC, NASD, NYSE and other SRO rules, regulations and policies, Grauer admitted that he mismarked client order tickets as "unsolicited," when, in fact, he solicited such trades from clients, in violation of UBSFS' express written policies as well the SEC regulations. Specifically, Grauer stated that he attempted to circumvent UBSFS' solicitation policy because it was more convenient to do so rather than to follow the UBSFS policies, which were designed and implemented to protect UBSFS clients as well as the firm and its employees.

10.   Similarly, Grauer also claimed during the investigation that he had contacted his clients from his office phone or cellular telephone, and that he had received specific authorization prior to making the trades in their accounts. However, when UBSFS matched

branch telephone records with the list of clients' telephone numbers provided by Grauer, UBSFS found no indication that Grauer had made the telephone calls.

11.    When Grauer was confronted with the fact that the office telephone records did not confirm any calls to the clients who he allegedly received specific authorization from to place trades in their accounts, Grauer changed his story to claim that he made the telephone calls from his home or cellular telephone.   However, when UBSFS requested that Grauer provide copies of his cellular and home telephone bills for the relevant period to further investigate the issue of unauthorized discretionary trading, Grauer refused to comply.

12.    Shortly thereafter, on or about July 24, 2006, Grauer voluntarily resigned his employment with UBSFS.   At that time, he had not (and still has not) furnished to UBSFS copies of his home or cellular telephone records.

13.    Grauer was aware of the written policies and regulations governing solicitation of client trades, as well as unauthorized and discretionary trading, which policies he received on a number of occasions and certified to yearly that he understood and complied with.

14.    While the investigation into Grauer's unlawful conduct was ongoing, employees at the Pearl River Branch observed Grauer remove several boxes of documents from the Branch Office which, upon information and belief, contained copies of confidential and proprietary client account statements and other personal client information.   These documents are UBSFS' property.   Such conversion of UBSFS' property violated the UBSFS Client Information and Privacy Agreement that Grauer agreed to abide by in connection with his employment with UBSFS. Specifically, Grauer agreed that:

> Our clients, both individual and institutional, entrust us not only with their financial assets but also with confidential information.   It is essential that [UBSFS'] clients know that personal information they entrust to us will be handled with integrity and discretion.   Accordingly, all information concerning

[UBSFS] clients must be treated as confidential and must not be disclosed to anyone outside [UBSFS] unless the disclosure is expressly authorized by the client; required by law, rule, regulation or legal process; or specifically allowed by [UBSFS'] privacy policies.

15.     Almost immediately after Grauer's resignation of employment, he misappropriated the confidential UBSFS client information that he had unlawfully removed from the Branch Office and contacted nearly all of UBSFS' clients with whom he worked.

16.     At first, Grauer contacted these UBSFS clients and provided them with investment advice, despite the fact that his securities licenses were not actively sponsored by any broker-dealer.  By way of example only, on or about July 31, 2006, he sent a letter to at least one UBSFS client providing his view on the marketplace, and offering to meet with him to discuss his "concerns" and "review [his] investments and to make sure [he is] headed in the right direction."  Similarly, on or about August 17, 2006, Grauer sent an email to a UBSFS client recommending that he purchase a certain security and stating "I like this chart."  Finally, on or about August 31, 2006, Grauer tried calling UBSFS clients and sent an email to them recommending the purchase of a certain security.   Not only were these breaches of Grauer's agreement with UBSFS not to misappropriate private client information, but such communications also violated SEC, NASD and NYSE rules and regulations.

17.     Subsequently, Grauer used the client information that he stole from the Branch Office to solicit UBSFS' clients to leave UBSFS and work with him as their investment and financial advisor.  Despite UBSFS' written demands that Grauer cease and desist his unlawful conduct, he continued to misappropriate such confidential client information in an effort to have such clients terminate their business relationships with UBSFS.

18.     By way of example only, Grauer personally approached and harassed UBSFS clients, without prior notice, at their homes by bringing them cookies in an effort to convince

them to terminate their investment relationships with UBSFS and follow him to his subsequent employer.

19.     Similarly, Grauer sent letters and stock research information to UBSFS clients on Ryan Beck & Co. letterhead, his current employer, in an effort to convince those clients to sever their relationship with UBSFS and move their accounts to Ryan Beck & Co.

20.     Grauer's intentional and malicious interference with UBSFS' business relationship with its clients through illegal means has caused the Counterclaim Plaintiffs to suffer substantial monetary and/or economic damages, including but not limited to the loss of past and future income, compensation, good will and other pecuniary and non-pecuniary benefits.

21.     Grauer's unlawful and tortious conduct did not end there.  Indeed, in an effort to convince his former clients to sever their long-standing relationships with the Counterclaim Plaintiffs, Grauer sent numerous letters and emails, and made several telephone calls, to UBSFS' clients, as part of a pattern of slanderous, libelous, defamatory and/or tortious conduct against UBSFS, Reichert and Connell to such clients.

22.     By way of example only, he sent letters on Ryan Beck & Co. letterhead referring to "what was done to [him]" at UBSFS and threatening that "in time, my clients and the NYSE will be made fully aware of what occurred."

23.     In addition, Grauer stated to several clients that Reichert and Connell are "unethical" and "could not be trusted."  Indeed, he sent a letter to UBSFS clients, in an effort to have such clients "transfer[ their] account to [him] at Ryan Beck & Co." stating, among other things, "the person I trusted most betrayed that trust."  And, Grauer sent an email to at least one UBSFS client on or about December 7, 2006, stating that his "trust [for Connell] was betrayed."

24.    Moreover, Grauer indicated in electronic communications with UBSFS clients that Reichert and Connell are Anti-Semitic by comparing himself to Alfred Dreyfus, a French-Jewish army officer who was convicted – and later exonerated due to a cover-up of his innocence – of treason in a sensational trial in France.

25.    These factual statements by Grauer are false and malign UBSFS', Reichert's and Connell's honesty, trustworthiness, dependability, and/or professional or business abilities.

26.    These false and defamatory statements were published and distributed to, among others, many of the UBSFS clients serviced by Connell.

27.    As a direct and proximate result of Grauer's slanderous, libelous, defamatory and/or tortious conduct, UBSFS, Reichert and Connell have suffered, and continue to suffer, loss of career fulfillment and harm to their career as well as their professional and personal reputations.

28.    As a direct and proximate result of Grauer's conduct, Reichert and Connell have suffered, and continue to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he they are entitled to an award of damages.

29.    As a direct and proximate result of Grauer's conduct, Reichert and Connell have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering for which they are entitled to an award of damages.

## AS AND FOR A FIRST CAUSE OF ACTION

(Defamation, Libel and Slander Per Se)

30.    Counterclaim Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 29 above with the same force and effect as though fully set forth herein.

31.    Around and subsequent to the termination of Grauer's employment with UBSFS, Grauer published false and defamatory statements about UBSFS, Reichert and Connell that were intended to, and did in fact, disparage, malign and degrade them in the eyes of others and/or impugn their honesty, trustworthiness, dependability, and professional fitness and abilities.

32.    Specifically, Grauer stated to several clients that UBSFS, Reichert and Connell are "unethical" and "could not be trusted."  Indeed, he sent a letter to UBSFS clients, in an effort to have such clients "transfer[ their] account to [him] at Ryan Beck & Co." stating, among other things, "the person I trusted most betrayed that trust."

33.    In addition, Grauer sent an email to at least one UBSFS client on or about December 7, 2006, stating that his "trust [for Connell] was betrayed."

34.    Grauer also indicated in electronic communications with UBSFS clients that Reichert and Connell are Anti-Semitic by comparing himself to Alfred Dreyfus, a French-Jewish army officer who was convicted – and later exonerated due to a cover-up of his innocence – of treason in a sensational trial in France.

35.    These statements are false and defamatory, and Grauer knew or should have known that such statements were false.

36.    These statements also constitute slander per se because they impugn UBSFS', Reichert's and Connell's honesty, trustworthiness, dependability, and professional fitness and

abilities by falsely charging them with conduct that would tend to injure them in their trade, business or profession.

37.    Grauer published these statements to third parties, including but not limited to UBSFS clients and/or others with no need to know such information.

38.    Upon information and belief, Grauer is continuing to publish these statements to third parties with no need to know such information.

39.    Grauer published, and continues to publish, these false and defamatory statements with malice.

40.    Grauer published, and continues to publish, these false and defamatory statements with knowledge of their falsity and/or with a reckless disregard for the truth or falsity of such statements.

41.    As a direct and proximate result of Grauer's conduct, UBSFS, Reichert and Connell have suffered, and continue to suffer, loss of career fulfillment and harm to their careers and business as well as their professional and personal reputations.

42.    As a direct and proximate result of Grauer's conduct, UBSFS, Reichert and Connell have suffered, and continue to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of damages in an amount to be determined at trial.

43.    As a direct and proximate result of Grauer's conduct, Reichert and Connell have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering for which they is entitled to an award of damages in an amount to be determined at trial.

44.    Grauer's conduct was intentional, malicious and/or showed a deliberate, willful and wanton or reckless disregard for UBSFS, Reichert and Connell, for which they are entitled to an award of punitive damages in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

45.    Counterclaim Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 44 above with the same force and effect as though fully set forth herein.

46.    As an employee of UBSFS, Grauer was entrusted with UBSFS' confidential and other proprietary information and owed UBSFS a fiduciary duty and/or duty of loyalty, including, but not limited to, the common law duty of an agent or employee not to use confidential knowledge acquired in his employment in competition with UBSFS.

47.    By engaging in the tortious and otherwise unlawful conduct against UBSFS as set forth above, including, but not limited to, using and converting UBSFS' trade secrets and confidential documents including client account statements and other information to solicit UBSFS' clients, Grauer breached his fiduciary duties and/or duty of loyalty owed to UBSFS.

48.    As a direct and proximate result of the Grauer's conduct, UBSFS has suffered, and continues to suffer, damages and other economic loss for which UBSFS is entitled to an award of damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Tortious Interference With Business Relations)

49.    Counterclaim Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 48 above with the same force and effect as though fully set forth herein.

50.    UBSFS, Reichert and Connell had stable, long-term business relationships with

their client investors.

51.    Grauer had knowledge of such business relationships and, as set forth above, intentionally interfered with such relationships, without justification.

52.    Grauer intentionally interfered with such business relationships for wrongful purposes, by wrongful means and by wrongful methods.

53.    Grauer permanently harmed UBSFS', Reichert's and Connell's business relationships with their clients, and caused them to suffer damages, including but not limited to the following: (a) loss of compensation and financial harm, including lost salary, bonuses, commissions, and income; (b) harm to Reichert's and Connell's career development, both with UBSFS and within the industry generally; (c) harm to their professional and personal reputations; and (d) severe mental anguish and emotional distress, including but not limited to, loss of self-esteem and self-confidence, loss of career fulfillment, and continual stress, anxiety and uncertainty over their careers.

54.    As a direct and proximate result of Grauer's unlawful and tortious conduct, UBSFS, Reichert and Connell have suffered, and continue to suffer, harm for which they is entitled to an award of monetary damages (including, but not limited to economic and compensatory damages) and other relief, in an amount to be determined at trial.

55.    Grauer's conduct was intentional, willful, wanton and malicious, and was motivated by ill-will and a desire to harm UBSFS, Reichert and Connell, and/or a deliberate or reckless disregard for their well-being, for which UBSFS, Reichert and Connell are entitled to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

**(Breach of Confidentiality Agreement / Misappropriation of Trade Secrets and Confidential Client Information)**

56.     Counterclaim Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 55 above with the same force and effect as though fully set forth herein.

57.     As part of, and as principal consideration for, his employment at UBSFS, Grauer agreed to abide by UBSFS' policies, rules and regulations, including, but not limited to, the UBSFS Client Information and Privacy Agreement. Specifically, Grauer agreed that:

> Our clients, both individual and institutional, entrust us not only with their financial assets but also with confidential information. It is essential that [UBSFS'] clients know that personal information they entrust to us will be handled with integrity and discretion. Accordingly, all information concerning [UBSFS] clients must be treated as confidential and must not be disclosed to anyone outside [UBSFS] unless the disclosure is expressly authorized by the client; required by law, rule, regulation or legal process; or specifically allowed by [UBSFS'] privacy policies

58.     Grauer intentionally breached this agreement when he misappropriated confidential UBSFS client information and used that information after he left UBSFS to solicit clients of UBSFS to work with him as their investment and financial advisor at his new employer.

59.     As a result of such breach and unlawful misappropriation of trade secrets and confidential client information, UBSFS, Reichert and Connell have suffered extensive damages, including, but not limited to, loss of clients, business, and good-will, as well as damage to their professional and personal reputations.

60.     As a direct and proximate result of Grauer's unlawful conduct, UBSFS, Reichert and Connell have suffered, and continue to suffer, harm for which they is entitled to an award of monetary damages and other relief, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Counterclaim Plaintiffs UBS Financial Services Inc., Thomas Reichert and Barry Connell respectfully request that an award be issued in their favor on the counterclaims asserted herein containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Grauer complained of herein violate the laws of the State of New York;

B.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Counterclaim Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment resulting from Grauer's breach of the UBS Client Information and Privacy Agreement and/or misappropriation of trade secrets and confidential client information;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Counterclaim Plaintiffs for (i) the loss of career fulfillment and harm to their careers and/or business, as well as their professional and personal reputations; (ii) loss of past and future income, compensation and benefits; and (iii) severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering by Reichert and Connell resulting from Grauer's defamatory, slanderous, libelous and otherwise tortious conduct;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Counterclaim Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, job

security and other benefits of employment resulting from Grauer's breach of his fiduciary duties and/or duty of loyalty;

  E.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Counterclaim Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment resulting from Grauer's tortious interference with their business relations with their clients;

  F.  An award of costs and expenses, as well as reasonable attorneys' fees, that Counterclaim Plaintiffs incurred in this action to the fullest extent permitted by law;

  G.  An award of damages for any and all other monetary and/or non-monetary losses suffered by Counterclaim Plaintiffs in an amount to be determined at hearing, plus prejudgment interest;

  H.  An award of punitive damages against Grauer;

  I.  Pre- and post-judgment interest on all amounts due; and

  J.  Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Counterclaim Plaintiffs UBS Financial Services Inc., Thomas Reichert and Barry Connell hereby demand a trial by jury on all issues of fact and damages in connection with the Counterclaims stated herein.


Dated: New York, New York
       August 16, 2007

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP


By:_____ **/s/ Douglas H. Wigdor**_____
       Douglas H. Wigdor (DW-9737)
       Andrew S. Goodstadt (AG-2760)

       Empire State Building
       350 Fifth Avenue
       Suite 5720
       New York, New York  10118
       Tel: (212) 239-9292
       Fax: (212) 239-9001

       *Counsel for Defendants and Counterclaim*
       *Plaintiffs UBS Financial Services Inc.,*
       *Thomas Reichert and Barry Connell*

## **Certificate of Service**

A copy of the foregoing Answer, Counterclaims and Demand for Jury Trial was served this 16th day of August 2007, via the District Court's ECF electronic filing system and overnight mail upon the following counsel for Plaintiff and Counterclaim Defendant Michael Grauer:

    Janice Goodman, Esq.
    Law Offices of Janice Goodman
    275 Seventh Avenue, Suite 2300
    New York, New York 10001

                         **/s/ Andrew S. Goodstadt**
                          Andrew S. Goodstadt