UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MICHAEL GRAUER, : 07 CV 5450 (LAP)
:
        Plaintiff, : ORDER
:
v. :
:
UBS FINANCIAL SERVICES, INC., et al., :
:
        Defendants. :
----------------------------------------------------------X

LORETTA A. PRESKA, United States District Judge:

      Construing plaintiff's letter of November 13 as a motion to quash a subpoena duces tecum served upon Verizon Communications and defendants' letter of November 16 as opposition thereto, the motion to quash is denied. Responsive documents shall be held pursuant to the confidentiality order already in place.

SO ORDERED:

Dated: November 28, 2007

                                                            /s/ Loretta A. Preska
                                                    LORETTA A. PRESKA, U.S.D.J.

grauerorder1128

[stamp: USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: _____ DATE FILED: 11/28/07]

# Janice Goodman
### Attorney at Law

275 SEVENTH AVENUE
SUITE 2300
NEW YORK, NEW YORK 10001

TEL 212.869.1940
FAX 212.410.1510
E-MAIL jg@janicegoodmanlaw.com

November 13, 2007

**By Fax (212) 805-7941**
Honorable Loretta A. Preska
United States District Court Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1320
New York, NY 10007

  Re: Grauer v UBSFS, et al
    07-CV-5450 (LAP/DCF)

Dear Judge Preska:

  I represent the Plaintiff in the above referenced matter and write to request a conference to discuss with the Court Plaintiff's proposed motion to quash a subpoena *duces tecum* served upon Verizon Communications.

  On or about November 5, 2007 Defendants served upon Verizon Communications a subpoena to produce all records of incoming and outgoing calls from the mobile number (845) 641-7426 and land lines (845) 358-1882 and (845) 358-1798, for the period of January 2006 to the present. (Copy attached) All of those phones are in the name of and belong to Lynda Grauer, the wife of the Plaintiff. They are used by Ms. Grauer as well as Plaintiff. In addition, Plaintiff was suspended from work at UBS on June 27, 2006 and terminated on July 24, 2006, yet the request is for documents is through today.

  On or about November 10th, 2007 Ms. Grauer received a letter from Verizon informing her that unless Verizon is served with a Court Order directing otherwise, it intends to produce the records by the date specified in the subpoena, which is November 30, 2007. (Copy attached)

  The documents sought clearly invade Ms. Grauer's privacy and intrude upon protected communications including calls to doctors and lawyers by both Ms. Grauer and Plaintiff. Plaintiff and Ms. Grauer have standing to challenge the third party subpoena where, as here, there is an invasion of protected privacy interests. Syposs v U.S., 181 F.R.D 224 (WDNY 1998); Chazin v Lieberman, 129 F.R.D. 97, 98 (SDNY 1990); Sierra Rutile Ltd. V Katz, No. 90 Civ 4913, 1994 WL 185751 at *2 (SDNY May 11, 1994); 9C Wright & Miller, Federal Practice and Procedure § 2457 (1971).

Honorable Loretta A. Preska                    -2-                    November 13, 2007

    The documents requested lack sufficient, if any, relevance to the claims asserted to warrant such wholesale invasion of the privacy rights of the Grauers. Plaintiff has a simple claim: he was terminated for alleged violations of SEC, NASD and NYSE regulations, including trading without specific client authorization, while his substantially younger partners who participated in the allegedly improper trades and activities were not fired. Unequal enforcement of even valid work rules is a violation of the anti-discrimination laws. McDonald v Santa Fe Trail Transportation, 427 U.S. 273 (1976).

    Most important, UBS brought these claims to the attention of the Regulatory Agencies. FINRA did a full investigation of the allegations of unauthorized trading, including calling clients and found no violations. Plaintiff suggests that these allegations were to prevent Plaintiff who does not have a non-compete, from fairly competing with UBS once he was fired, and that UBS provoked some clients to "complain" about Mr. Grauer. This is supported by the fact that at the time of his firing the U-5 properly indicates that there were no client complaints against Plaintiff. Yet several months later the U-5 was amended with a claim of oral complaints. It was this submission that provoked the FINRA investigation, which has been a cloud over Plaintiff's ability to earn a living. Even with the favorable ruling, overcoming the innuendos is difficult.

    Before he was fired, Plaintiff was subjected to an interrogation regarding certain trades that he made on May 24, 2006. Those were the only trades at issue. He told the UBS investigative attorney that he and his partner, Barry Connell a defendant in this action, worked jointly on all trades. They shared calling clients regarding trades, and very often Plaintiff would enter the trade while Mr. Connell made the calls. They shared contacts with the clients. They shared equally all commissions based on client trades, and all client monthly statements indicate that the two of them were the joint financial advisors for each client. They did not have separate books of business. Yet only Plaintiff was held responsible for what is the alleged infraction.

    UBS has all of its own phone records to determine whether either Mr. Connell or Mr. Grauer called the clients on the date in question, but Plaintiff suggests that since FINRA saw no violation, UBS is hard pressed to claim improper activity. They have whatever evidence they claim is relevant for their actions.

    Defendants purport to need the home phone records of Mr. and Ms. Grauer because they claim that Plaintiff said he may have called clients from home. Whether he did or did not make specific calls is of no relevance at this point. At best, UBS is seeking after acquired evidence that could not have in any way effected its decision to terminate Plaintiff's employment. Moreover, Plaintiff has no intention of offering records demonstrating that he made such calls from home, since we do not believe that is relevant to the heart of the complaint—was he treated differently then his younger colleagues.

Honorable Loretta A. Preska                     -3-                         November 13, 2007

    Lack of relevancy is supported by Defendants refusal to turn over just such records in its possession. Request 14 of Plaintiff's Interrogatories addressed to Defendant Connell asks for "telephone records of calls that were made by him to clients for the period of November 1, 2005 through June 2006. Connell objected on every conceivable ground including that the documents and information are "irrelevant" "seeks documents outside of the time period relevant to the present litigation" seeks "confidential personal information" about Connell and seeks "confidential information that concerns individuals who are not parties to the action, the disclosure of which would violate the privacy interests of such individuals." Plaintiff also requested that UBS produce the same business telephone records for Larry McNeill, another substantially younger partner of Plaintiff's who engaged in the same trading. Again Defendant UBS refused on the same grounds.

    It appears to be Defendants' position that Plaintiff is limited to the documents UBS relied on in its investigation and Plaintiff cannot probe the record further to challenge that investigation or to challenge whether the younger Financial Advisors are held to the same standards. Defendants cannot have it both ways – claiming Plaintiff's phone records which were not part of its original investigation are relevant, while Defendants' are not.

    The burden to demonstrate the relevancy and necessity for this information rests with the party seeking the discovery. Plaintiff suggests, however, that in balancing the equities, Plaintiff and Ms. Grauer's privacy rights far outweigh the meager claim of relevancy of this after acquired evidence.

    This is to certify that the parties have made a good faith effort to resolve the dispute, but have been unsuccessful. I, therefore, request that Plaintiff have an opportunity to bring this motion before you. In the interim, I further request that you issue an order to Verizon that no documents be turned over until a determination is made by this Court. Thank you for your consideration.

Respectfully submitted,

Janice Goodman

JG:kfm
Enclosures

cc: Douglas Wigdor, Esq. (by Fax 212 239-9001)
    Michael Grauer
    Lynda Grauer

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

Southern          DISTRICT OF          New York

Michael Grauer
V.                                SUBPOENA IN A CIVIL CASE

UBS Financial Services, Inc., et al

Case Number: 07 CV 5450 (LAP)

TO: Verizon Communications
Verizon Law Enforcement Assistance (LEA)
Continental U.S. Verizon Custodian Of Records
P O Box 1001, MC – TXD01613, San Angelo, TX 76902

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
Records of incoming and outgoing calls for the Mobile number (845) 641-7426, and the Landlines (845) 358-1882 AND (845) 358-1796, for the period of January 2006 – present

| PLACE Thompson Wigdor & Gilly LLP, Attn: Andrew Goodstadt 350 Fifth Avenue, Suite 5720 New York, NY 10118 (212) 239-9292 | DATE AND TIME 11/30/2007 9:30 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] | 10/31/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Andrew S. Goodstadt, Esq., Thompson Wigdor & Gilly LLP, 350 Fifth Avenue, Suite 5720 New York, NY 10118 (212) 239-9292 (Attorneys for Defendants)

If action is pending in district other than district of issuance, state district under case number.

11/12/2007 10:05 FAX                                                                       PAGE
                                                                                            ⌀002

                                                                    VERIZON LEGAL COMPLIANCE
                                                                            140 WEST STREET
                                                                                 ROOM 2103
                                                                    NEW YORK, NY 10007 - 2109
                                                                              888-483-2600

November 07, 2007

LYNDA GRAUER
2 FOREST RIDGE RD

NYACK, NY 10960

Case Number: 07377784
Requesting Agency #:
Re: 8453581798

Dear LYNDA GRAUER,

This is to notify you that VERIZON has received a subpoena requiring the production of certain telephone records associated with the telephone number shown above.

VERIZON has no information as to the purpose of the subpoena or the nature of the action or investigation being undertaken. Any questions you have should be directed to:

ATTN:
THOMPSON WIGDOR & GILLY LLP
350 FIFTH AVENUE
STE 5720
NEW YORK, NY 10118

Please be advised that, unless VERIZON is served with a court order directing otherwise, VERIZON intends to produce the records by the date specified in the subpoena.



## Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

**Douglas H. Wigdor**
dwigdor@twglawyers.com

November 16, 2007

**BY FACSIMILE**

Honorable Loretta A. Preska
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1320
New York, NY 10007

Re:  Grauer v. UBS Financial Services Inc., et al., 07-CV-5450

Dear Judge Preska:

We represent the Defendants and Counterclaim Plaintiffs ("UBS") in the above referenced matter and write in response to Plaintiff's letter dated November 13, 2007, requesting a conference in connection with Plaintiff's anticipated motion to quash the subpoena duces tecum issued by UBS to Verizon Communications. As Plaintiff admits, Verizon Communications, the recipient of the subpoena, has not objected to its issuance, terms or scope. Rather, only Plaintiff has opposed it.

Although Plaintiff summarily states that the issuance of the nonparty subpoena "lacks sufficient, if any, relevance to the claims asserted to warrant such wholesale invasion of the privacy rights of the Grauers," Plaintiff does not provide any support for such mischaracterization. To the contrary, Plaintiff fails to accurately explain the circumstances of the voluntary resignation of his employment. Specifically, Plaintiff was under internal investigation for his violations of both internal policies of UBS and SRO regulations, including, mismarking customer order tickets as "unsolicited," when in fact he was soliciting such trades, as well as trading in clients' accounts without proper authorization between November 2005 and July 24, 2006 (the date he faxed his voluntarily resignation to UBS), and not only on May 24, 2006, as falsely alleged by Plaintiff.

# Thompson Wigdor & Gilly LLP

Honorable Loretta A. Preska
November 16, 2007
Page 2

Although Plaintiff attempts to mislead the Court by stating that he was "terminated" for such violations where his partners were not fired, he in fact was never terminated by UBS.[1]

As part of the investigation, Plaintiff originally claimed that he made client calls from his home telephone and cellular telephone numbers to receive requisite authorization. Indeed, during the investigation, Plaintiff volunteered to provide copies of telephone records to demonstrate his compliance with UBS and SRO policies and regulations. However, rather than producing the records during the investigation to prove that he did not violate such policies and regulations, he voluntarily resigned his employment with UBS, without prior notice.

The determination of relevance of the materials sought through a subpoena duces tecum is the same as other discovery under Fed. R. Civ. P. 26(b)(1) – i.e., whether it is reasonably calculated to lead to the discovery of admissible evidence. See, e.g., Conopco, Inc. v. Wein, 05 Civ. 9899, 2007 LEXIS 63045, at *5 (S.D.N.Y. Aug. 27, 2007) (denying motion to quash subpoena for, inter alia, defendant's financial records because such request was reasonably calculated to lead to discovery of admissible evidence). Here there can be no dispute that Plaintiff's telephone records are reasonably calculated to lead to the discovery of admissible evidence. Indeed, the records will demonstrate whether Plaintiff engaged in the violations for which he was being investigated at the time of his voluntary resignation.

Defendants are not interested in violating any purported privacy interest Plaintiff may have in his phone records (although we dispute that fact and believe he does not even have standing to move to quash the third-party subpoena). Indeed, we would be willing to withdraw the subpoena in the event Plaintiff stipulates that he never made any client calls from his home or cellular telephone during the period that he engaged in unauthorized trading. We also would accept copies of his telephone records with redactions for calls to his attorneys to prevent the disclosure of any potential attorney-client communications.[2] However, Plaintiff will not enter into this stipulation. Thus, we are required to pursue such records via subpoena.

---

[1] It deserves note that although Plaintiff's partners' trades were reviewed as part of the investigation into Plaintiff's misconduct, his partners were not under investigation because their trading patterns did not raise any concerns of unlawful conduct. Plaintiff's claims that he shared client responsibility with his partners by virtue of a shared book of business simply are not true. Rather, Plaintiff and his partners shared a shared book of business for purposes of splitting revenues only. Plaintiff's misconduct cannot be attributed to his partners simply through their joint book of business as Plaintiff attempts to do.

[2] Plaintiff also alleges that disclosure of calls to his physicians would violate his privacy interests. However, Plaintiff has waived any possible privacy right by seeking compensatory damages from Defendants for purported emotional distress he suffered as a result of his resignation of employment.

# Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

Honorable Loretta A. Preska
November 16, 2007
Page 3

Defendants are entitled to seek telephone records from Plaintiff's telephone carriers because such records clearly are relevant to the defense of this action, and any effort to prevent Defendants from obtaining such records would be unfairly prejudicial to its defense. By way of example only, the records requested by Defendants go directly to the heart of the defense of this matter – i.e., that Plaintiff was investigated because he engaged in unlawful conduct that violated internal policies at UBS. Moreover, we have a reasonable basis to believe that these telephone records will refute any claim by Plaintiff that he actually called clients to receive their authorization.

Similarly, Plaintiff's telephone records during the period subsequent to his resignation are relevant in light of Defendants' counterclaims for defamation, as well as Plaintiff's unlawful use of proprietary client information he removed from UBS to solicit current UBS clients. Thus, Plaintiff's telephone records are directly relevant to the claims alleged, and damages sought, by Defendants/Counterclaim Plaintiffs. Accordingly, Defendants are entitled to Plaintiff's telephone records indicating that he has contacted, and continues to contact, current UBS clients.

Plaintiff also attempts to support his anticipated motion on the grounds that UBS will not provide corporate telephone records for the same period. Plaintiff's argument fails because he has not, and cannot, demonstrate any basis to indicate that his partners engaged in similar misconduct. Indeed, as set forth above, his partners were not under investigation because their trading patterns did not indicate any dereliction of duties, and the review of their trades as part of the investigation into Plaintiff's trading practices demonstrated that they in fact did not engage in similar misconduct. Thus, any request for their telephone records is simply a transparent fishing expedition to retrieve proprietary and confidential information without any rational relation to the claims or defenses in this matter.

In light of the foregoing, Defendants respectfully request that the Court enter an order denying Plaintiff's motion to quash the nonparty subpoenas. If the Court deems necessary, we would gladly participate in a court conference on these issues.

Respectfully Submitted,

Douglas H. Wigdor

cc: Janice Goodman, Esq. (by facsimile)