UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAEL GRAUER,

        Plaintiff,

  -against-                                      SECOND AMENDED COMPLAINT
                                                                          JURY TRIAL DEMANDED

UBS FINANCIAL SERVICES, INC.,
THOMAS REICHERT, and BARRY CONNELL,        07- CV-5450 (LAP)(DCF)
        Defendants.
-------------------------------------------------------------------x

**NATURE OF COMPLAINT**

1. This is an action brought to preserve the rights secured to the Plaintiff by the Age Discrimination in Employment Act ("ADEA"), 19 U.S.C. §621, et seq., and the New York Executive Law §§290, et seq. ("State HRL"). More specifically, Plaintiff was forced to resign from his position at UBS Financial Services, Inc. ("UBS") under the threat of termination, and was retaliated against by Defendants who have attempted to prevent his obtaining employment and interfered with his business relationships because he refused to "retire" and agree to a four year non-compete. Thomas Reichert ("Reichert"), Plaintiff's supervisor; and Barry Connell ("Connell"), Plaintiff's business partner, aided and abetted in the discriminatory practices.

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 and 1343(4), conferring original jurisdiction upon this Court of any civil action to recover damages or to seek equitable relief under any act of congress providing for the protection of civil rights; the All Writs Act, 28 U.S.C. §1651(a) empowering the Court to issue writs necessary or appropriate to

aid in its jurisdiction, and the ADEA.

3. As relates to Defendants Reichert and Connell, the Court's diversity jurisdiction is is invoked pursuant to 28 U.S.C. §1332 where the sum in contest exceeds $75,000

4. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. 1367 on the grounds that the discriminatory and retaliatory acts challenged herein are also in violation of the laws of the State of New York.

5. Venue is properly laid in the Southern District of New York pursuant to 29 U.S.C. § 621 et seq. and 28 U.S.C. § 1391 because the unlawful employment practices were committed in this judicial district.

## PARTIES

6. Plaintiff, Michael Grauer ("Grauer"), who is 61 years old, having been born August 26, 1945, resides in Nyack, New York, Rockland County. He was employed as a Financial Advisor by UBS from May 1998 until he was constructively discharged on July 24, 2006. For all times relevant, he was assigned to the UBS branch office located at 1 Bluehill Plaza, Pearl River, Rockland County, New York. (hereinafter "Rockland Branch")

7. Defendant UBS is a financial services institution with Corporate Headquarters at 1200 Harbor Boulevard, Weehawken, New Jersey and principal New York Headquarters located at 1285 Avenue of the Americas. For all times relevant, UBS was an employer engaged in interstate commerce, employing more than twenty (20) persons.

8. Defendant Reichert resides at Upper Saddle River, New Jersey. He is employed by

UBS as Branch Manager of the Rockland Branch office. At all times relevant, Reichert was Plaintiffs' supervisor.

9.   Defendant Connell resides at Chester, New Jersey. He is a Financial Advisor and at all times relevant was employed by UBS at its Rockland Branch. At all times relevant, he was Plaintiff's business partner at UBS.

## ADMINISTRATIVE PROCEEDINGS

10.   On or about March 27, 2007, plaintiff filed timely charges of age discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). Sixty days have elapsed since the filing of the charges.

## STATEMENT OF THE CASE

11.   Plaintiff had been employed in the financial services business for about 22 years prior to joining UBS. He previously had successful employment with Smith Barney for 17 years; and Prudential for 4 years. He had an impeccable record with only one customer complaint against him over those 22 years and that complaint was dismissed by his company and the NYSE.

12.   Plaintiff was hired by UBS as a financial advisor in May, 1998. He was recruited to UBS from a NYC money manager and brought a book of business of about $400,000 to the firm. Up to 2000, he worked on his own and grew his book of business to about $500,000.

13. In 2000, Plaintiff partnered with Connell, making all of the clients of each joint clients of both. Thereafter, neither had an independent book of business. Connell also had about $500,000 in business. As partners, they grew their joint business to $1.4 million by the middle of 2006.

14. Starting in 2000, Connell and Plaintiff shared all responsibilities and duties for their joint clients: each talked with and advised the clients; each entered transactions on behalf of the clients; and all revenues from these clients were shared equally.

15. During the last 3 years of his employment, Plaintiff's average income, based solely on commissions, was between $250,000 and $270, 000 per annum.

16. Starting January 2006, Connell and Plaintiff initiated conversations with Morgan Stanley, a competitor of UBS, about possibly moving to that firm. Those conversations continued to the summer of 2006.

17. On information and belief, on or about May 24, 2006 Plaintiff's manager, Reichert, learned about the conversations with Morgan Stanley.

18. On May 31, 2006 Plaintiff was called into a meeting with Reichert and Caroline Hall, Esq. and a 3rd person. At that meeting Plaintiff was questioned by Ms. Hall about certain trades that were made on May 24, 2006 on behalf of joint clients. Ms. Hall said she thought the trades may not have been approved by the clients and that they were going to initiate an investigation.

19. Although all of the trades made on May 24th were on behalf of clients that Plaintiff shared with Connell, who was equally responsible, there was no investigation of Connell, who at age 41 is substantially younger than Plaintiff.

20. There was also a third partner, Larry McNeill, who is about 42-43, who participated in some of the questioned trades. No investigation was made of his activities.

21. Plaintiff retained counsel to challenge the investigation as discriminatory. UBS' response was that it would drop the investigation, if Plaintiff would "retire" and agree to a four-year non-compete. Since Plaintiff needed to earn a living, and was not previously encumbered with a non-compete he refused.

22. Subsequently, Plaintiff was told that if he did not agree to retire under the onerous non-compete agreement he would be terminated. Under threat of termination, Plaintiff resigned as of July 24, 2006.

23. The form U-5 submitted to the NASD by UBS regarding Grauer's termination stated that at the time of termination he was under internal review for "mismarking tickets as unsolicited and for exercising discretion without written authority, No customers have made any complaints."

24. On information and belief, Defendant Connell has made trades on behalf of clients without written authorization. Moreover, Connell participated in all transactions made on behalf of their joint customers.

25. No investigation was ever conducted into Connell's trading activities.

26. The form U-5 submitted to the NASD by UBS regarding Grauer's termination stated the investigation was concluded on July 24, 2006 and that no customers have made any complaints against Grauer.

27. Plaintiff was unemployed for the next 3 ½ months, during which time there was no investigation.

28. As a consequence of the actions UBS took against Plaintiff, he lost a potential job opportunity with Morgan Stanley.

29. In November, 2006 Plaintiff was hired by Ryan Beck & Co, another financial services company. Thereafter, UBS, Reichert and Connell have made every effort to undermine Plaintiff with former clients. They have launched a smear campaign to besmirch Plaintiff's reputation. On information and belief, Connell and Reichert slandered Plaintiff with his former clients. UBS has contacted Plaintiff's new employer with libelous claims to force his termination.

30. On information and belief, since Plaintiff obtained new employment, UBS has solicited and encouraged client complaints against him.

31. On or about March 2007 UBS submitted an amended U-5 stating that there was a verbal complaint of unauthorized trading which complaint was received on November 14, 2006 and which was settled on February 21, 2007.

32. Plaintiff was never told the nature of the complaint nor asked regarding the veracity of the complaint.

33. As a consequence of the U-5 submission regarding termination, NYSE initiated an investigation into Grauer's trading activities regarding UBS' claim that he mismarked tickets and exercised discretion without written authority.

34. In response to inquiry from the investigatory agency, UBS stated that one client, who was out of the country when a trade was transacted on her behalf, ratified the trade and that "the firm did contact some of Mr. Grauer's other clients and those clients indicated that Mr. Grauer contacted them regularly."

35. FINRA, the agency that took over the investigation, issued a letter of caution, which is not a reportable event, regarding the mismarking of tickets, but took no action on any allegations regarding unauthorized trading, which in essence dismissed such claims by UBS.

36. Plaintiff believes that his age was a motivating factor in the determination to investigate his dealings with clients, while not holding his younger colleagues, who did exactly what he was charged with doing, accountable.

37. Plaintiff believes that Defendants have engaged in a concerted effort to prevent him from earning a living because he refused to "retire" and sign a non-compete.

38. Plaintiff has been financially harmed and emotionally devastated by having his reputation besmirched in this way.

**FIRST CAUSE OF ACTION**

39. Plaintiff repeats and re-alleges each and every allegation contained in ¶1 through 38 with the same force and effect as if stated herein.

40. Defendants have discriminated against Plaintiff in the terms and conditions of his employment and by terminating him on the basis of his age in violation of ADEA and the New York State HRL.

41. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the Defendants' discriminatory practices unless and until the Court grants relief.

## SECOND CAUSE OF ACTION

42. Plaintiff repeats and realleges each and every allegation contained in ¶1 through 38 with the same force and effect as if stated herein.

43. Defendants retaliated against Plaintiff in violation of the ADEA and the New York State HRL.

44. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the Defendants' retaliatory practices unless and until the Court grants relief.

## PRAYER FOR RELIEF

45. Plaintiff requests that the Court grant the following relief:

   (a) Award Plaintiff lost wages and fringe benefits together with pre-judgment interest;

   (b) Award Plaintiff compensatory damages;

   (c) Award Plaintiff liquidated damages;

   (d) Order the expunging and/or revision of the U-5 submitted by UBS;

   (e) Declare that Defendants have breeched the duties, responsibilities and obligations imposed upon them by the provisions of the ADEA and the New York State HRL;

   (f) Permanently enjoined Defendants from engaging any further in the acts complained of;

   (g) Award Plaintiff the cost of this action, including reasonable attorney fees;

   (h) Grant Plaintiff such other and further relief as this Court deems necessary

    just and proper;

 (i) Order a jury trial on all actions in this case.


Dated: New York, New York
    December 28, 2007

              **LAW OFFICES JANICE GOODMAN**


              By:_____
               Janice Goodman (0497)
               275 Seventh Avenue, Suite 2300
               New York, New York 10001
               (212) 869-1940