UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MICHAEL GRAUER,

        Plaintiff,

     -against-                        07-CV-5450 (LAP/DCF)

UBS FINANCIAL SERVICES, INC.,
THOMAS REICHERT, and BARRY CONNELL,

        Defendants.
----------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH THIRD PARTY SUBPOENAS

Janice Goodman (0487)
Law Offices of Janice Goodman
275 Seventh Avenue, Suite 2300
New York, NY 10001
(212) 869-1940

To:

        Douglas H. Wigdor, Esq,
        Thompson, Wigdor & Gilly, LLP
        Empire State Building
        350 Fifth Avenue, Suite 5720
        New York, NY 10118
        212-239-9292

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES....................................................................................................ii

PRELIMINARY STATEMENT...........................................................................................1

STATEMENT OF THE CASE............................................................................................2

POINT I:   DEFENDANTS LACK STANDING TO CHALLENGE
           THE SUBPOENAS...........................................................................................6

POINT II:  THE THIRD PARTY WITNESSES HAVE RELEVANT INFORMATION AND
           SHOULD BE COMPELLED TO APPEAR AT A DEPOSITION.............................8

           A.  The Law...................................................................................................8

           B.  The Third Party Witnesses Clearly Have Relevant Information That
               Plaintiff Should Be Allowed to Probe.................................................10

               a.  Relevance to Retaliation Claim ....................................................11

               b.  Relevancy to Plaintiff's Other Claims and Defenses ......................13

               c.  There Is No Undue Burden............................................................15

POINT III:  DEFENDANTS' BOGUS CLAIM OF HARASSMENT IS NO MORE THAN
            A SMOKE SCREEN TO MASK THE ISSUE OF PLAINTIFFS
            ENTITLEMENT TO THE REQUESTED DISCOVERY........................................16

CONCLUSION.....................................................................................................................19

## TABLE OF AUTHORITIES

Page

### Cases

*Bridgeport Music Inc. v UMG Recordings, Inc.*
2007 WL 4410405 (S.D.N.Y. 2007)*; .....................................................................9,16

*In re: Blackstone Partners, L.P.* , 2005 WL
1560505 (S.D.N.Y.2005)............................................................................... 9

*Concord Boat Corp v. Brunswick Corp.*
169 F.R.D. 44 (S.D.N.Y.1996).............................................................9, 10, 15

*During v City University of New York*
2006 WL 2192843 (S.D.N.Y., 2006).......................................................9

*In re Subpoena Issued to Dennis Friedman, 350 F 3d 65, 69 (2d Cir. 2003)*.................................8

*Griffith v U.S.,*
2007 WL 1222586 (S. D. N.Y. 2007).................................................6, 8, 10

*Haywood v Hudson,*
1993 WL 150317 (E.D.N.Y.1993)...............................................................6

*Koresko v Bleiweis,*
2005 WL 182800 (E.D. Pa. 2005)...............................................................6

*McDonald v Santa Fe Trail Transp. Co.,*
417 U.S. 273, 96 S. Ct. 2574, 49 L.Ed 2d 493 (1976)......................................13

*PKF Intern Corp. v IBJ Schroder Leasing Corp.,*
1996 WL 525862 (S.D. N.Y. 1996)...............................................................6

*Sierra Rutile Ltd. v Katz,*
1994 WL 185751 * 2 (S.D.N.Y. 1994)...........................................................16

*Synsytrol Corp. V. Radon Corp. of America*
18 F.R.D. 279 (S.D.N.Y.1965)...............................................................8

*Syposs v United States*
181 FRD 224, 226 (W.D.N.Y. 1998)...........................................................8

*Texas Dept. of Community Affairs v. Burdine*
450 U.S. 248, 254-256 (1981)...............................................................14

*Thomas v Marina Assoc,*
    202 FRD 433 (E.D. Pa. 2001).............................................................................................6

*U. S. v International Business Machines Corp.*
    83 F.R.D. 97 (S.D.N.Y. 1979)........................................................................................9

*Windsor v Martindale,*
    175 FRD 665 (D. Colo. 1997)........................................................................................6

**Other Authorities**

Rule 45 (3) of the Federal Rules of Civil Procedure.......................................................................7

Moore's Federal Practice & Procedure § 45.50[3] (2nd Ed. 1994)..................................................6

9C Wright & A. Miller Federal Practice & Procedure § 2457 at 431 (1971)..................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MICHAEL GRAUER,

                          Plaintiff,

        -against-                                    07-CV-5450 (LAP/DCF)

UBS FINANCIAL SERVICES, INC.,
THOMAS REICHERT, and BARRY CONNELL,

                          Defendants.
------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS MOTION TO QUASH THIRD PARTY SUBPOENAS
## AND IN SUPPORT OF CROSS-MOTION TO ENFORCE

Defendants make three baseless assertions in support of their motion to quash the third

party subpoenas served on former clients of Plaintiff Michael Grauer ("Grauer") who allegedly

complained about Plaintiff: (1) they are overbroad in the documents requested; (2) they place an

undue burden on UBS and their clients; and (3) there will be no prejudice to Plaintiff if the

subpoenas are quashed. These arguments are totally without merit, and, therefore, Plaintiff

requests that the Court deny the Motion to Quash and order the appearance to the four (4)

surviving witnesses.

Plaintiff issued subpoenas *ad testificandum* and *duces tecum* on Louis Magrino, Peter

Margonelli, Eugene Chernick,[1] Scott Chernick and Ellen Lawrence. All five (5) witnesses were

joint clients of Grauer and Defendant Barry Connell ("Connell"). Each allegedly orally

complained about Grauer, three of them some four months after Grauer's termination. Plaintiff

---

[1] Mr. Chernick has passed away. Thus obviously there will be no action relating to him.
It is, however, necessary to discuss the reasons for subpoenaing him to answer Defendants'
bogus claim that subpoenas were issued as a form of harassment.

asserts those complaints were solicited or encouraged by Defendants as part of his claim for retaliation. Second Amended Complaint ¶ ¶ 29-30. Ellen Lawrence, also a client of Grauer and Connell, was allegedly the client who instigated the investigation into Grauer's trading activities which led to his suspension and ultimately to his resignation under threat of termination. The documents requested are all personal to the witnesses and include handwritten notes they have regarding any complaints against UBS or any financial advisors, letters, memos, e-mails or draft settlement agreements. Defendants do not have these documents. The period of time is from January 1, 2000 going forward.

As a preliminary matter, Defendants lack standing to challenge the document subpoenas since they cannot assert any personal privilege and there is no evidence that they are authorized to speak on behalf of the third party witnesses. Second, enforcement of subpoenas falls within the ambit of the liberal rules of discovery and the broad definition of relevancy. Here, without even needing an expansive interpretation, it is clear that the potential testimony is directly related to his claim of retaliation, a cause of action that Defendants neglect to even bring to the Court's attention in their motion, as well as his discrimination charge and a defense against Defendants' counterclaims. Third, to refuse Grauer the right to call witnesses who have relevant evidence that would support his claims or contradict Defendants assertions would allow UBS to control all of the evidence in this case. Plaintiff would be left accepting Defendants claims without any opportunity to probe their defenses. Clearly nothing can be more prejudicial to Grauer than the denial of his ability to challenge Defendants' assertions.

### STATEMENT OF THE CASE

Grauer, prior to his termination from UBS, had an unblemished 26 year career in the

securities industry.  He was employed by UBS and its predecessor Paine Webber ("PW") for

eight (8) of those years, from May 1998 until his termination in July 2006 at age 61.  When he

was recruited to PW he was asked by Defendant Thomas Reichert ("Reichert") to produce the

names and account value of the clients whose business he thought he could bring to the firm,

which record remains in Grauer's personnel file.  He brought about a $400,000 book of business,

which he grew while at PW/UBS. Second Amended Compl.¶¶ 11-12.

In 2000 Grauer established a working partnership with Defendant Barry Connell

("Connell") whereby they pooled their client lists and both serviced all clients. [2]  The partners,

Grauer and Connell (collectively "the partners"), were listed as joint brokers on all account

statements; they had a single identification number; neither had an individual book of business;

they shared all responsibilities and duties for their joint clients; each talked with and advised

clients; each entered transactions on behalf of clients and all revenues from these clients were

equally shared.  Second Amended Compl. ¶¶ 11-14.

**Grauer's First Cause of Action is for the discriminatory investigation and**

**termination of his employment.**  On May 31, 2006 Grauer was called into a meeting with

Reichert and Caroline Hall ("Hall"), a UBS attorney, and questioned about certain trades made

on May 24, 2006 on behalf of the clients of the partners.  The charge was that the trades were

made without client authorization.  Grauer explained that he and Connell always attempted to

reach clients before taking action, that he and Connell shared responsibilities and either he or

---

[2]  Connell was hired as a financial advisor by UBS in 1998.  However, unlike Grauer, he had no prior experience in the securities industry.  Connell's contribution to the partnership was a book of business which was primarily inherited from a then recently retired Financial Advisor who had mentored him.

Connell would make the calls. Grauer would put in trades sometimes relying on Connell's representation that he called the client, sometimes the reverse was true.

Connell, who at 41 years old was 20 years younger than Grauer, was never called in on May 31st. At no time prior to Grauer's termination was Connell ever questioned about any of the trading activities conducted on behalf of their joint clients. Connell claims that at some unspecified time within a year after Grauer was suspended he had a telephone conversation of some unrecalled length where, in essence, the firm policies were reviewed with him by Caroline Hall.[3]

UBS launched into an investigation, but only of Grauer, not his younger partner. Although discovery has revealed that a UBS attorney involved in the investigation admitted that as between Grauer and Connell it is "impossible to decipher who made what trades" UBS proceeded to hold only Grauer accountable. Goodman Aff. Exh. B.[4] On June 30, 2006 UBS suspended Grauer. Connell was not suspended. There was an attempt to resolve the matter, but Grauer refused to sign the severance agreement offered by Defendants whereby he would have to waive any claims of discrimination and agree to "retire" with a non-compete that would prevent

--------------------------------------------------

[3] At his deposition, Connell had a remarkable lapse in memory. He testified that Attorney Hall and Reichert had a conversation with him regarding trading policies which he claims to have been an "investigation." However, he does not recall when it was, except it was after Grauer was suspended and less than a year later; he does not recall how it came about; he does not recall how long the conversation lasted; he does not recall what was said except that Hall was reviewing policies of the firm, but he does not recall which policies were reviewed, except that she talked about the seriousness of unauthorized trading. Hall never asked him about any specific trades, or how he and Grauer worked together. Tr. 192-200; 346-360. Goodman Aff. Exh. A, which is filed separately under seal.

[4] Defendants' have waived attorney client privilege as relates to the investigation since they are using it as the rational for termination.

-4-

him from working in the securities industry for 4 years. Therefore, on July 24, 2006 Grauer resigned under the threat of termination. Second Amended Comp. ¶¶ 21-22.

**Grauer's Second Cause of Action is for Retaliation**. After he resigned UBS reported to the NASD on Grauer's form U-5 that the investigation was concluded as of the date of resignation and that there were no customer complaints against him. Plaintiff was unemployed until November of 2006, when he was hired by Ryan Beck & Co., now Steifel, Nicolaus & Company, Inc. It was at this time that Defendants began a smear campaign, resulting in UBS filing an amended U-5 claiming that a customer complaint was filed in November of 2006 and settled on on February 21, 2007. FINRA launched a full scale investigation which is now concluded. There was no finding of improper or unauthorized trading by Grauer. Second Amended Compl. ¶¶ 23, 26-38.

In November, 2006 Reichert reported receiving orally three (3) customer complaints against Grauer. One complaint, for which UBS compensated the client several thousand dollars, was essentially that the client's account did not "grow enough" when Grauer was his representative. Goodman Aff. Exh. C. Another alleged complaint regarding unauthorized trading related to a trade made in 2004. However, the complainant subsequently followed the initial trade with five (5) option transactions on the original stock. Goodman Aff. Exh. D.

Peter Margonelli, Louis Magrino and Eugene Chernick, the clients who allegedly made complaints are three of the witnesses that Plaintiff seeks to depose. Magrino's complaint is registered on November 9, 2006. Chernick's on November 14, 2006 and Margonelli's on December 1, 2006. The proximity in timing of the complaints, the fact that they were all allegedly orally made to Reichart and the fact that they were taken shortly after Grauer's

-5-

employment by Ryan Beck, supports Plaintiff's good faith belief that they were encouraged by Defendants. See Second Amended Compl ¶¶ 29-35.

UBS also claims that the basis for its initial investigation of Grauer's alleged unauthorized trading was a trade made on behalf of Ellen Lawrence who was out of the country at the time. They learned this because of a postcard sent by Ms. Lawrence to both Connell and Grauer. Goodman Aff. Exh. E. It is admitted that Ms. Lawrence ratified the trade. 2d Amended Complaint ¶ 35. She is also a subpoenaed witness, as is Scott Chernick. Discovery revealed that he too allegedly submitted an oral complaint against Grauer.

All of these witnesses have information directly related to Plaintiff's complaint and defenses.

## POINT I:

## DEFENDANTS LACK STANDING TO CHALLENGE THE SUBPOENAS

The law is clear, a party does not have standing to quash a subpoena on a third party, except if there is a personal claim of privilege or privacy relating to the documents being subpoenaed. *Griffith v U.S.*, 2007 WL 1222586 (S. D. N.Y. 2007); *Koresko v Bleiweis*, 2005 WL 182800 (E.D. Pa. 2005); *Thomas v Marina Assoc*, 202 FRD 433 (E.D. Pa. 2001); *Windsor v Martindale*, 175 FRD 665 (D. Colo. 1997); *PKF Intern Corp. v IBJ Schroder Leasing Corp.*, 1996 WL 525862 (S.D. N.Y. 1996); *Haywood v Hudson*, 1993 WL 150317 (E.D.N.Y.1993). See: Moore's Federal Practice & Procedure § 45.50[3] (2nd Ed. 1994); 9C Wright & A. Miller Federal Practice & Procedure § 2457 at 431 (1971). The rule usually addresses the standing of a party to quash privileged documents requested from third parties, not subpoenas regarding the testimony of a witness..

Defendants cannot even arguably claim a privilege interest on their own behalf regarding the documents requested. They do not argue that the subpoenaed documents fall within any of the privileges recognized by Rule 45 (3) of the Federal Rules of Civil Procedure. They are not claimed to be: attorney work product; attorney client privilege matter; trade secrets, confidential research; development or commercial information or unretained expert opinion. Most are not even documents conceivably in the possession of the Defendants.

Since UBSFS cannot claim any personal privilege, it tries to avoid the black letter law by asserting claims on behalf its clients. However, there is no indication that UBS is legally representing the clients or is otherwise authorized to bring on its motion. Quite the contrary, one of the clients initiated a call to counsel for Plaintiff in which he informed her that he was not represented by counsel, and where he expressed no objection to the deposition. Goodman Aff ¶ 10.

The documents subpoenaed are the personal records of the witnesses relating to any disputes that the individual had with UBSFS or one of its financial advisors. Specifically each witness was asked for any handwritten notes they kept reflecting negotiations, letters, memos, e-mails or drafts of settlement papers that they have regarding any complaints. These are not documents that Defendant would have and certainly not documents privileged to the Company.

Arguably, the only viable assertions Defendants made is that the requested documents are "confidential" and the time period is overbroad. These are objections more appropriately addressed through a request for a Protective Order, since they do not go to the issue of privilege or privacy.

If the Court deems it appropriate, Plaintiff would not object to subjecting the documents

to the Protective Order already in place to meet Defendants' desire for confidentiality.

Defendants' claim of "undue burden" is primarily based on a meritless assertion that the

documents are not relevant. The documents relating to alleged complaints are clearly relevant.

Discussed Point II. B *infra* In terms of burden based on the temporal scope of the request,

Plaintiff would not object if the Court deemed it more appropriate to limit the date to January 1,

2005.

## POINT II:

### THE THIRD PARTY WITNESSES HAVE RELEVANT INFORMATION AND SHOULD BE COMPELLED TO APPEAR AT A DEPOSITION

Bordering on the frivolous is Defendants' argument that Plaintiff should not be allowed

to even depose the third party witnesses. Defendants' legal argument misstates the law–the

burden is clearly upon the party seeking to quash a subpoena to demonstrate the undue burden.

Whether testimony and documents are relevant to the claims asserted are subject to the liberal

rules of discovery incorporated in the Federal Rules of Civil Procedure. The information that

the witnesses may have is directly related to Plaintiff's claim of retaliation. They are also related

to Plaintiff's defenses to Defendants claims that he was investigated because he, not his equal

partner, was accountable for the clients, and to Defendants' counterclaims. Under the Federal

Rules, Plaintiff is entitled to probe these issues.

### A.  The Law

Contrary to Defendants claim, it is black letter law in this Circuit that the burden of

persuasion on a motion to quash a subpoena rests with the movant. *In re Subpoena Issued to*

*Dennis Friedman, 350 F 3d 65, 69 (2d Cir. 2003); Griffith v The United States of America,*

-8-

*supra*; *Bridgeport Music Inc. v UMG Recordings, Inc.*, 2007 WL 4410405 *(S.D.N.Y. 2007); In re: Blackstone Partners, L.P.* , 2005 WL 1560505 (S.D.N.Y. 2005); *Concord Boat Corp v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996); *U. S. v International Business Machines Corp.*, 83 F.R.D. 97 (S.D.N.Y. 1979). [5]

"Whether a subpoena imposes upon a witness an 'undue burden' depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered....". *Griffith v The United States of America, supra* at * 2 (citations omitted) The most critical factor in determining whether there is undue burden in requiring a third party witness to testify at a deposition and to produce documents is whether the information sought is relevant to the claims and defenses of the party seeking the discovery. *During v City University of New York*, 2006 WL 2192843 (S.D.N.Y., 2006) *2;. "The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)" *Syposs v United States*, 181 FRD 224, 226 (W.D.N.Y. 1998) (citations omitted). "Discovery is relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *During* supra at *2 (citations omitted). The Second Circuit eloquently laid out the standards for determining relevancy when it said:

> The deposition-discovery regime set out by the Federal Rules of
> Civil Procedure is an extremely permissive on to which courts have
> long "accorded a broad and liberal treatment to effectuate their
> purpose that civil trials in the federal courts [need not] be carried
> on in the dark" Indeed, the rules provide for the taking of

---

[5]    Defendants reliance on a 1965 case, *Synsytrol Corp. V. Radon Corp. of America*, 18 F.R.D. 279 (S.D.N.Y. 1965) simply does not comport with the overwhelming caselaw to the contrary.

> discovery, including by oral depositions, "regarding any matter not
> privileged, that is relevant to the claim or defense of any party" and
> that "[r]elevant information need not be admissible." Moreover,
> the rules generally do not place any burden on parties to justify
> their deposition and discovery requests. *In re Subpoena Issued to
> Dennis Friedman*, 350 F. 3d at 69.

"Where relevance is in doubt, the district court is to be permissive." *Griffith v The United States
of America, supra* at * 2 (citations omitted).

Defendants do not carry their burden.   Defendants "cannot merely assert that compliance

with the subpoena withing setting forth the manner and extent of the burden..." will create a

burden. *Concord Boat,* 169 FRD at 48.  Defendants offer no facts to support their conclusory

claim that the testimony will be a burden because it is not relevant.

### B. The Third Party Witnesses Clearly Have Relevant Information That Plaintiff Should Be Allowed to Probe.

Subpoenas *ad testificandum* and *duces tecum* were issued to Louis Magrino, Peter

Margonelli, Eugene Chernick, Scott Chernick and Ellen Lawrence.  All five  allegedly

complained about Grauer.  The documents that they were requested to produce included their

personal documents, handwritten notes, draft of settlements relating to claims against UBS and

any financial advisor since 2001.   Wigdor Aff. Exhs. B–E.

Plaintiff for his Second Cause of Action claims that Defendants solicited or encouraged

these clients to complain about him.  Second Amended Complaint ¶¶ 29-34.  Defendants admit

that it filed an amended U-5 for Grauer stating that there was a complaint against him, but

denying the remaining allegations.  Answer ¶¶ 29-33.  The law unequivocally allows Grauer to

probe these issues and seek evidence in support of his claims.  To refuse him that right would be

to make him a prisoner of Defendants' biased presentation of evidence.

-10-

The potential testimony is also relevant to Grauer's other claims and defenses, particularly the scattershot counterclaims alleged against him. Engaging in unauthorized trades is at the heart of Defendants' rationale for investigating Grauer's trading activities and is a primary basis for their Counterclaim for breach of fiduciary duties. Counterclaim ¶¶ 8, 11. Yet they seek to convince this Court that the witness who allegedly complained about such trading cannot be deposed to determine the validity of the claims and their working relationship to Grauer and Connell. In other words, Defendants propose that the judge and jury only be allowed to see the evidence that they want to offer. That simply is not how the Federal Court Rules work. Parties are entitled to probe the assertions of their opponent through depositions as well as other discovery mechanisms.

### a. Relevance to Retaliation Claim

Plaintiff has more than a good faith belief that the complaints are part of an overall scheme of retaliation against him, entitling him to probe the issues. Three of the Complaints Magrino, Margonelli and E. Chernick were made four months after Grauer's employment terminated and all three were made within days of each other: Magrino on 11/9/06; E. Chernick on 11/14/06; Margonelli on 12/1/06. Goodman Aff. Exhs. C, D & G. Those dates are within weeks after Grauer started his new employment and Plaintiff submits that they were encouraged in an effort to thwart his employment opportunities.

All of the complaints were allegedly orally transmitted from the client to Defendant Reichart, there being no documentation from the client himself. All of the complaints were questionable in nature. For example, one of the complainants allegedly complained that his "account never grew." Goodman Aff. Exhibit C. There is reason to question the circumstances

-11-

of this complaint since he had been Grauer's client for over 20 years and had been brought to UBS by Grauer. Moreover, there is no allegation of impropriety. What happened that impelled UBS to make a cash settlement with the client. The other complaints involved transactions that allegedly occurred one and two years earlier. At no time was Plaintiff ever told the nature of the complaints or given any opportunity to contest. All of the complaints were settled for cash. All of the settlements had waivers in favor of the company and all its employees, with a special exception that there was no waiver in Grauer's favor. The confluence of timing, with the nature of the complaints and settlements and the fact that all of them were allegedly orally transmitted to Reichert with no documentation from the clients certainly forms a basis to allow Plaintiff to probe the nature and circumstances of the complaints. Goodman Aff. Exhs. B, C, D & G.

The E. Chernick complaint raises a special issue. In 2007 UBS amended Plaintiff's U-5 indicating that a customer complaint had been filed against Grauer regarding unauthorized trading. Not only does this go on Plaintiff's record viewable by the public, but it apparently motivated a more intense investigation into Grauer's trading activities. Although there was ultimately no finding of impropriety by Grauer, he sustained substantial legal fees defending the claims. Even more serious, however, is that there never should have been an amendment. Attorney Hall testified that UBS was required to notify the NASD of the settlement, because under the Rules where the settlement is for $10,000 or more, it must be reported.. Tr. 37-38. Goodman Aff. Exh. H. However, the settlement was for less than $10,000. Goodman Aff. Exh D. UBS intentionally blemished Grauer's record by submitting the amended U-5.

The S. Chernick complaint is equally suspect. The original U-5 submitted stated that there were no customer complaints against Grauer at the time of his termination. However, in

-12-

discovery Defendants produced a document which alleges that on June 20, 2006 S. Chernick orally complained to Defendant Reichart about the sale of some stock on 5/10/06. Goodman Aff. Exh. Exh. F. Grauer was still employed by UBS and still working daily in the office, yet at no time did Reichart talk with Grauer about this complaint or its veracity.  Again Plaintiff should be allowed to probe the issues.

### b. Relevancy to Plaintiff's Other Claims and Defenses.

The gravamen of Plaintiff's complaint is that he was treated differently then his younger colleagues regarding allegations that he had engaged in unauthorized trading.   At no time was Connell, who shared full responsibility on all accounts, interrogated and threatened with investigation on these transactions.  Defendants claim that the complaints were against Grauer and that is why he was singled out.  UBS refused to look into Grauer's claim about how the partnership worked.  The Supreme Court has held that discrimination can be found where proper company rules are unfairly applied. *McDonald v Santa Fe Trail Transp. Co.,*417 U.S. 273, 96 S. Ct. 2574, 49 L.Ed 2d 493 (1976)

The investigation of Grauer allegedly started because of Ellen Lawrence, a client of Grauer and Connell who was out of the country at the time a trade was made on her account. This was uncovered because of a  postcard she sent to "Barry and Mike."  Despite the fact that the card was addressed to both advisors, and there is an admission that it is near impossible to determine who made the trades, only Grauer was questioned about it.  Goodman Aff. Exhs. B and  E.  Her records were sent to FINRA along with the above complainants in support of a claim that there was unauthorized trading conducted by Grauer.

In essence, Defendants claim that Connell and others were not held accountable because

-13-

these were Grauer's clients and he was the one who made the trades on their behalf, and there were no such allegations regarding Connell or any other financial advisor. Defendants deny that Grauer and Connell were equal partners in terms of work and responsibilities for the accounts that they jointly serviced. There is only an acknowledgment that they shared commissions, but not responsibilities. Plaintiff conversely alleges that they were equal partners doing everything together. Second Amended Compl. ¶¶ 13,14. Ans. ¶¶ 13,14. Specifically, Plaintiff alleges that Lawrence dealt with both Connell and Grauer as reflected in the addressees of her postcard, yet Connell distances himself from any knowledge or responsibility for her account although she had an account of very substantial worth. Tr. 164-66. Goodman Aff. Exh. A. This is a hotly contested factual issue going to the heart of Plaintiff's claims and Defendants' counterclaims. Given these conflicts, Ms. Lawrence is the only one who can supply the answers.

Because of the pivotal role that Lawrence played in the first steps of the investigation of Grauer but not Connell, her testimony is critical to Plaintiff's defense and his ability to demonstrate that Defendants reasons for the actions it took against plaintiff are pretextual to mask its discriminatory intent. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-256 (1981).

Similarly the two Chernicks and Margonelli are clients who Plaintiff knows can support his claim that there was a true partnership between Grauer and Connell in servicing their accounts.

These witnesses also have relevant information regarding Plaintiffs' denial that he engaged in unauthorized trading and defense to Defendants' counterclaim. Defendants non-discriminatory reason for investigating, suspending and threatening dismissal of Grauer is that he

-14-

engaged in unauthorized trading. Moreover, their counterclaims rest in part on the claim that

Grauer engaged in unauthorized trading. Def. Counterclaim ¶ 6. These are customers who

Plaintiff knows about because they are among the ones whose files were sent to FINRA and they

were identified in relation to their complaints. Plaintiff denies the allegations that he was not

authorized to make the challenged transactions, and should be allowed to probe them to

demonstrate that the claims are baseless.

### c. There Is No Undue Burden

Defendants have not carried their evidentiary burden of demonstrating undue burden.

"They cannot merely assert that compliance with the subpoena without seeting forth the manner

and extent of the burden *Concord, 169 FRD at 48.* As demonstrated above, the information

requested is not only relevant but critical to Plaintiff's ability to pursue his claims and defenses.

Clearly the documents requested are not overwhelming, and in no way compares with the 22

requested categories of documents, probably ranging in thousands of pages found burdensome in

*Concord Boat.* The primary documents requested are personal notes that the witness may have

made. Moreover, Plaintiff has said that he is willing to limit the dates to 2005 and thereafter.

Defendants oft repeated assertion that Plaintiff "has received all relevant information

concerning the UBSFS clients..." Defendants' Memo pp. 4, 7, 8, 10 precisely describes the

problem Plaintiff confronts and why he needs these depositions. Plaintiff has received what

Defendants believe is relevant–that is those documents supporting their theories; to wit: the

handwritten notes of Defendant Reichart claiming he received complaints from the witnesses,

and settlement documents that Defendants will undoubtedly claim as part of their damages..

Plaintiff is entitled to probe the information produced by Defendants with presumably non-biased

third persons who have knowledge. To deny Plaintiff access to these witnesses is to deny him

his rights under the Rules to access any information relevant to his claims or defenses. It would

have the unjust result of forcing him to litigate his claims and defend against the counterclaims

based solely on the limited evidence that Defendants are prepared to provide.

Plaintiff appreciates the hardship for third parties to be compelled to participate in a

litigation not of their making or interest. But the law recognizes such procedure as a necessary

part of the justice system. "Discovery should not simply be denied on the ground that the person

or entity from whom it is sought is not a party to the action. *Bridgeport Music Inc. Supra at \*12.*

*Sierra Rutile Ltd. v Katz,* 1994 WL 185751 \* 2 (S.D.N.Y. 1994) The question is the balance of

interests between the witnesses desire to be left alone and the need of the party to obtain relevant

information. Plaintiff submits that in this case the prejudice caused to Plaintiff by a denial of his

right to probe for this evidence far outweighs any burden to the witness.

POINT III

DEFENDANTS' BOGUS CLAIM OF HARASSMENT IS NO MORE THAN A SMOKE
SCREEN TO MASK THE ISSUE OF PLAINTIFFS ENTITLEMENT TO THE REQUESTED
DISCOVERY

Defendants, lacking any viable legal arguments, continue to engage in an uncivil

campaign attacking the integrity of Plaintiff and his counsel in an effort to divert the Court's

attention from the merits of the case. To claim that the requested Depositions are not relevant to

Plaintiff's claims and defenses flies in the face of the evidence and need as described above. The

claim that these subpoenas were issued solely to harass, not for the legitimate reasons described

above, was bogus when it was first raised in Defendants' Motion for a Stay and continues to be

be used on this motion as a meritless diversionary tactic.

-16-

Counsel was aware of the fact that Plaintiff's Counsel sent letters to the witnesses promptly after the stay was issued. Those letters went out before Defendants brought on their contempt motion, yet they never bothered to inform the Court and, therefore, once again misled the Court as to the facts. Presumably they reraise this issue again in the hope that the Court will have forgotten the series of events.

At the hearing on the contempt motion held by the Court, Plaintiff's Counsel explained that it was her understanding that the stay as it was written related only to enforcement of the subpoenas, but did not preclude the continued issuance. Only one more subpoena was served after the stay. Counsel apologized to the Court if that was a misunderstanding on her part of the court's intent..

Promptly after the Court issued its stay, Counsel wrote to all witnesses informing them that they were not required to appear because of the stay. In response to the Court's question as to why she served that additional subpoena, Counsel explained (1) the subpoenas were already in the hands of the process server; (2) there would be additional expenses if ultimately plaintiff was allowed to proceed, since only a stay of the "issued subpoenas" was granted, and (3) if the Court denied the Motion to Quash then the process of setting deposition dates would be expedited by the fact that the subpoenas were already served. The Court made no further inquiry, and at this point the Court concluded the hearing. Goodman Aff. ¶ 13.

Given the full picture of the case that the Court now has, and the evident relevancy of the sought discovery, Plaintiff submits that Defendants request to make a motion for contempt was part of a litigation strategy to distract from the true issues related to these subpoenas. Such litigation tactics should not be condoned.

-18-

CONCLUSION

For the above stated reasons Defendants Motion to Quash the Third Party subpoenas

should be denied. Plaintiff's Cross-Motion for an Order Enforcing the Subpoenas should be

granted.

Dated: New York, New York
       April 7, 2008

Respectfully submitted,

LAW OFFICES OF JANICE GOODMAN

By: Janice Goodman (0487)
275 Seventh Avenue, Suite 2300
New York, NY 10001
212-869-1940

-19-