UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL GRAUER,                                :
                                               :
                  Plaintiff,            :
                                               :
      - against -                            :         07 Civ. 5450 (LAP) (DCF)
                                               :
                                               :
UBS FINANCIAL SERVICES INC.,                   :
THOMAS REICHERT, and BARRY CONNELL,            :
                                               :
                  Defendants.           :
----------------------------------------------------------------X
UBS FINANCIAL SERVICES INC.,                   :
THOMAS REICHERT, and BARRY CONNELL,            :
                                               :
                  Counterclaim Plaintiffs, :
                                               :
      - against -                            :
                                               :
                                               :
MICHAEL GRAUER,                                :
                                               :
                  Counterclaim Defendant. :
----------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS/COUNTERCLAIM PLAINTIFFS' MOTION TO QUASH SUBPOENAS
AND IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION
TO ENFORCE SUBPOENAS**

THOMPSON WIGDOR & GILLY LLP

Douglas H. Wigdor (DW-9737)
Andrew S. Goodstadt (AG-2760)
Jordan K. Merson (JM-7939)
350 Fifth Avenue, Suite 5720
New York, New York 10118
Telephone:   (212) 239-9292
Facsimile:    (212) 239-9001

Counsel for Defendants/Counterclaim Plaintiffs

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .....................................................................................................................2

    I. PLAINTIFF'S SUBPOENAS ISSUED TO UBSFS' CLIENTS SHOULD BE QUASHED BECAUSE THEY LACK ANY RELEVANCE TO THE CLAIMS AND DEFENSES IN THIS CASE .................................................................................2

        A. Plaintiff Admitted To Engaging In Unauthorized Trading And Mismarking Order Tickets ...............................................................................................2

        B. There Is No Evidence That Defendants Treated Any Similarly-Situated Employee Differently Than Plaintiff ..............................................4

        C. Plaintiff's Subpoenas Are Irrelevant In Light Of The Lack Of Any Evidence Of Age Discrimination Or Retaliation .........................................................6

            1. Plaintiff Admitted That He Did Not Engage In Protected Activity ...................................................................................................6

            2. The Evidence Demonstrates That Plaintiff's Age Was Not A Motivating Factor For The Investigation Into His Unlawful Trading Practices 7

    II. DEFENDANTS HAVE STANDING TO OPPOSE THE HARASSING SUBPOENAS ISSUED TO THE UBSFS CLIENTS ...................................................................9

CONCLUSION.............................................................................................................10

## PRELIMINARY STATEMENT[1]

Plaintiff's memorandum in opposition to Defendants' motion to quash the subpoenas issued to UBSFS' clients Eugene Chernick (deceased), Scott Chernick, Ellen Lawrence, Louis Magrino and Peter Margonelli (hereinafter collectively "UBSFS' clients"), together with the record evidence in this case, conclusively confirm the absence of any legitimate basis to demand depositions of five UBSFS clients, and seek over eight years of wholly irrelevant material and documents from such non-parties. Indeed, as set forth below, the evidence adduced during discovery conclusively demonstrates that the subpoenas issued by Plaintiff cannot possibly lead to the discovery of admissible evidence. Rather, these subpoenas are an undue burden on UBSFS and its clients, designed solely to harass UBSFS' clients and further damage Defendants' business.

Specifically, Plaintiff attempts to demonstrate the relevance of these subpoenas on the grounds that the potential testimony of these clients is somehow relevant to his claims of retaliation. However, as the record clearly demonstrates, Plaintiff testified that his claims of retaliation are predicated on his refusal to sign a retiring broker agreement, which, even if accepted as true, cannot be considered "protected activity." As such, Plaintiff's retaliation claim fails as a matter of law, and any testimony or documents provided by UBSFS' clients regarding their complaints of Plaintiff's misconduct cannot possibly lead to discovery of relevant or admissible evidence regarding Plaintiff's retaliation claim.

Plaintiff's claim that the subpoenas are relevant to his discrimination claims must also fail as a matter of law. Indeed, not only has Plaintiff admitted to engaging in unauthorized trading on behalf of UBSFS' clients, but the issue for Plaintiff's disparate treatment claim is whether Defendants treated Plaintiff differently than similarly-situated employees on the basis of

---

[1] This memorandum also is submitted in opposition to Plaintiff's Motion to Enforce the Subpoenas of Scott Chernick, Ellen Lawrence, Louis Magrino and Peter Margonelli.

his age. As Plaintiff was not similarly-situated to Mr. Connell – i.e., there is not a scintilla of evidence demonstrating that UBSFS had any knowledge of misconduct by Mr. Connell– information and/or testimony from these clients cannot possibly lead to the discovery of admissible evidence. Indeed, each of these clients complained about Plaintiff, and pursuant to Court Order, Defendants have produced all documents concerning any disputes with the UBSFS clients at issue. Accordingly, Plaintiff possesses all relevant information.

Finally, Plaintiff alleges that the subpoenas are relevant to defending the counterclaims asserted against him. As Plaintiff has admitted all of the misconduct that forms the bases for the counterclaims, the testimony or documents from UBSFS' clients cannot be relevant.

Based on the foregoing, as well as Defendants' initial moving papers, the Court should grant Defendants' motion to quash the subpoenas in its entirety

## ARGUMENT

**I. PLAINTIFF'S SUBPOENAS ISSUED TO UBSFS' CLIENTS SHOULD BE QUASHED BECAUSE THEY LACK ANY RELEVANCE TO THE CLAIMS AND DEFENSES IN THIS CASE**

### A. Plaintiff Admitted To Engaging In Unauthorized Trading And Mismarking Order Tickets

Plaintiff alleges that Defendants discriminated against him on the basis of his age when UBSFS investigated him for his illicit trading practices. Specifically, Plaintiff was investigated because he sent unauthorized research to clients, mismarked tickets as "unsolicited," and perpetrated unauthorized trades in violation of UBSFS policies, as well as the rules and regulations of the self-regulatory organizations. There is not a shred of evidence to support Plaintiff's claim that his age had anything to do with this investigation.

In a desperate effort to resurrect his claims, Plaintiff alleges that the subpoenas issued to the UBSFS' clients somehow will lead to admissible evidence to support his claim that he was discriminated against due to his age. However, the fact is that Plaintiff admitted that he engaged

2

in the unlawful transactions that led to the investigation, in violation of the rules and regulations of the regulatory bodies, and that such illicit conduct should result in his discharge. (*See* Pl. Dep. pp. 107-109; 114-115, attached to the Reply Affidavit of Douglas H. Wigdor ("Wigdor Reply Aff.") as Exhibit 1). Not only did Plaintiff testify that he entered transactions on behalf of his clients without the required authority, Plaintiff also admitted in writing that his manager, Thomas Reichert, caught him – not any of his "partners" – making an unauthorized trade on behalf of a client who was out of the country and could not be reached to obtain the necessary authorization to enter such a transaction. (*See* Wigdor Reply Aff. at Exhibit 12.)[2] Indeed, this unauthorized transaction formed one of the main bases for the investigation into Mr. Grauer's trading practices.

In light of these admissions, the information that Plaintiff now seeks from UBSFS' clients cannot possibly lead to the discovery of admissible evidence regarding Plaintiff's claim of discrimination. Specifically, these UBSFS clients – who are directed by subpoena to divulge eight years of material that is wholly irrelevant to the allegations in this case – cannot possibly provide any evidence of disparate treatment based on Plaintiff's age. Not only has Plaintiff admitted to engaging in the unlawful conduct at issue, but all relevant documents concerning the complaints filed by these clients against Plaintiff already have been produced. Accordingly, the subpoenas are harassing and present an undue burden on UBSFS and its clients. *See*, *e.g.*, *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 05 Civ. 6430 (VM) (JCF), 2007 U.S. Dist. LEXIS 91957, at *4-5 (S.D.N.Y. Dec. 17, 2007) (whether subpoena imposes "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of

---

[2] It deserves note that during the entirety of the investigation – up to and including Plaintiff's voluntary resignation of his employment – Plaintiff did not once raise his belief that the investigation into his admittedly unlawful trading practices was based on his age. (Pl. Dep. at 59:2-12, 214:14-19, 216:2-7, attached to Wigdor Reply Aff. at Exhibit 1.)

3

the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.").

### B. There Is No Evidence That Defendants Treated Any Similarly-Situated Employee Differently Than Plaintiff

The entirety of Plaintiff's age discrimination claims consists of his suggestion that his "partner," Barry Connell – who was over forty at the time of the investigation – engaged in similar practices and was not investigated. (*See* Pl. Dep. at 238-39, attached to Wigdor Reply Aff. at Exhibit 1.) Indeed, Plaintiff admitted that other than his age and his allegation that Mr. Connell engaged in similar misconduct, he has no other evidence that his age had anything to do with the investigation into his trading practices. *Id.*

Even accepting Plaintiff's uncorroborated allegations about Mr. Connell as true (which Defendants vehemently deny), the relevant inquiry for Plaintiff's disparate treatment claim is whether UBSFS had knowledge of similar misconduct alleged against Mr. Connell (or any other financial advisor), and treated him differently than Plaintiff due to his age. *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 462 (S.D.N.Y. Feb. 16, 2006) (granting Defendants' Motion for Summary Judgment where employee failed to show that Defendants had knowledge that similarly situated employees engaged in comparable conduct since "it is the employer's state of mind that the disparate treatment inquiry purports to evince"). Thus, even if Mr. Connell engaged in similar misconduct, if Plaintiff cannot demonstrate that UBSFS had knowledge of such alleged misconduct, his claims must fail as a matter of law. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63-65 (2d Cir. 1997) (affirming district court's summary judgment in favor of employer where it was "impossible" for female employee to demonstrate that the [employer] treated similarly situated males differently "when there is no evidence that [employer] knew about any other violations" of the rule the employee was terminated for violating).

4

Unlike the overwhelming evidence of Plaintiff's misconduct that led to the investigation of his trading practices (*e.g.*, unauthorized research attempted to be sent to clients, Plaintiff's trade entry for a client who could not be contacted for authority, patterns of trading the same low priced securities in multiple clients' accounts and marking them as "unsolicited," patterns of entering numerous trades in the same security in multiple clients' accounts within minutes of each other, customer complaints filed against Plaintiff), there is not a scintilla of evidence that UBSFS had any knowledge of Mr. Connell's alleged misconduct. By way of example only, each of UBSFS' clients to whom Plaintiff issued a subpoena filed complaints against Plaintiff. (*See* Wigdor Reply Aff. at Exhibits 4-8) Defendants already have produced all documents concerning any disputes with the UBSFS clients at issue. Moreover, Plaintiff has not – and cannot – point to a single piece of evidence that would demonstrate UBSFS had any knowledge that Mr. Connell engaged in any misconduct (let alone to the extent of Plaintiff's misconduct), and failed to act upon it. In particular, Plaintiff certainly cannot demonstrate how eight years of material and depositions of these UBSFS clients possibly can provide any such evidence. Thus, the subpoenas are nothing more than a transparent fishing expedition designed to continue to harass UBSFS' clients and damage Defendants' business.

Finally, contrary to Plaintiff's allegation, the record demonstrates that Mr. Connell's (and Mr. McNeill's) trading activity was reviewed as part of the investigation into Plaintiff's misconduct. Indeed, the lawyers at UBSFS who conducted the investigation looked into all transactions entered by all three of them. (*See* Cohen Dep. Tr. at 15-16, attached to Wigdor Reply Aff. at Exhibit 2.) Thus, Plaintiff's allegation that only his trading activity was reviewed is demonstrably false.[3]

---

[3] Mr. Connell also testified he had a 45 minute conversation with UBSFS in-house lawyers before Plaintiff resigned, and that he was investigated by the Company. (*See* Connell Dep. at pp. 191:19-:25; 344:7-349:13, 364:20-:25, attached to Wigdor Reply Aff. at Exhibit 3.)

5

### C. Plaintiff's Subpoenas Are Irrelevant In Light Of The Lack Of Any Evidence Of Age Discrimination Or Retaliation

#### 1. Plaintiff Admitted That He Did Not Engage In Protected Activity

Plaintiff claims that he needs the information and depositions from UBSFS' clients to support his claims of retaliation. (*See* Pl. Br. at 11-13.) However, despite Plaintiff's suggestion, the subpoenas cannot possibly lead to any information relevant to his retaliation claim because Plaintiff admits that any alleged retaliatory conduct involving these clients was not in response to any protected activity. Specifically, Plaintiff claims that Defendants encouraged these clients to file complaints against him because he did not sign a retiring broker agreement with UBSFS prior to his resignation of employment, and that such refusal allowed him to secure other employment and compete with UBSFS. (*See* Pl. Dep. at 226-27; 229-30, attached to Wigdor Reply Aff. at Exhibit 1.)

To establish a *prima facie* case of retaliation, plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Isaac v. City of New York*, 06-4613-cv, 2008 U.S. App. LEXIS 6389 (2d Cir. Mar. 26, 2008); see also *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125 (2d Cir. 1999) (defendants entitled to judgment as a matter of law on retaliation claim because plaintiff had engaged in no protected activity). Here, the underlying activity that Plaintiff claims as the predicate for his retaliation claims – *i.e.*, his refusal to sign the retiring broker agreement – is <u>not</u> protected activity. Indeed, to be considered "protected activity," a plaintiff must demonstrate a good faith belief that he or she was complaining about discrimination. *Garcia v. Lewis*, 05 Civ. 1153 (SAS), 2005 U.S. Dist. LEXIS 11955 at * 14 (S.D.N.Y. June 16, 2005)

Here, it cannot possibly be argued that Plaintiff's refusal to sign a lucrative retiring broker agreement was "protected conduct." Indeed, Plaintiff admitted that he had not

6

complained of any discrimination at that time. (Pl. Dep. at 57; 220, attached to Wigdor Reply Aff. at Exhibit 1.) In light of the fact that Plaintiff's retaliation fails as a matter of law, it is clear that the testimony or information available from any of UBSFS' clients cannot possibly lead to admissible evidence of retaliation.[4]

### 2. The Evidence Demonstrates That Plaintiff's Age Was Not A Motivating Factor For The Investigation Into His Unlawful Trading Practices

In addition to the overwhelming evidence set forth above regarding the legitimate business reasons justifying the investigation into Plaintiff's unlawful trading practices, the facts and circumstances surrounding such investigation do not support any inference of age discrimination. Indeed, the exact opposite is true.

By way of example only, Plaintiff was 52 years of age when he was hired by UBSFS. (Wigdor Reply Aff. at Exhibit 9.) Thus, there is a strong inference that Plaintiff's age was not a motivating factor for the subsequent investigation into his unlawful trading practices. *Boyle v. McCann-Erickson, Inc.*, 949 F. Supp. 1095, 1104 (S.D.N.Y. 1997) (Court granted Defendants' Motion for Summary Judgment holding that the fact Plaintiff was hired when he was 46 years old undercuts an inference of age discrimination). There is nothing that any of the UBSFS clients can provide that changes this inference. Moreover, Plaintiff was hired by Thomas Reichert, who was over 40 at the time he hired Plaintiff as a financial advisor at UBSFS. (Wigdor Reply Aff. at Exhibit 10)

Plaintiff also claims that Mr. Reichert was the "discriminator" in this case who allegedly instigated and participated in the investigation into Plaintiff's trading practices, which ultimately led Plaintiff to resign his employment at UBSFS. (Pl. Dep. at 105:13-:15, 114:4-:13, 158:8-:25,

---

[4] It also deserves note that at least one customer complaint was received prior to Plaintiff's refusal to sign the retiring broker agreement. (*See* Wigdor Reply Aff. at Exhibit 5.)

7

239:14-240:7, 245:24-246:14 attached to Wigdor Reply Aff. at Exhibit 1)[5]  In light of the fact that Mr. Reichert is the same person who hired Plaintiff when Plaintiff was 52 years of age, there is a strong presumption that age was not a motivating factor in the alleged adverse employment action.  *Kemp v. A & J Produce Corp.*, 00-CV-06050 (ERK), 2005 U.S. Dist. LEXIS 45731 at *20 (E.DN.Y. June 7, 2005) (Court granted Defendants' Summary Judgment Motion holding that same actor inference further weakened Plaintiff's discrimination claims); *Zuffante v. Elderplan, Inc.*, 02 Civ. 3250 (WHP), 2004 U.S. Dist. LEXIS 5425 at *19 (S.D.N.Y. Mar. 31, 2004) (Court granted Defendants' Summary Judgment motion and noted that the 'underlying rationale for the [same actor] inference is simple: it is suspect to claim that the same manager who hired a person in the protected class would suddenly develop an aversion to members of that class.'").  Indeed, it simply does not make sense that Mr. Reichert would hire Plaintiff when Plaintiff was 52 years old, and then discriminate against him because of his age eight years later.

Further evidence of the frivolous nature of Plaintiff's claims of age discrimination includes the fact that Mr. Reichert was 51 years old at the time he allegedly discriminated against Plaintiff due to Plaintiff's age.  Indeed, the fact that Mr. Reichert was in the same protected class as Plaintiff provides an additional presumption that Plaintiff's age had nothing to do with the decision to investigate his illicit trading activity.  *Zuffante*, 2004 U.S. Dist. LEXIS 5425 at *19 (Court stated that where the person who made the decision to fire was the same person who made the decision to hire, "it is difficult to impute to that person an invidious motivation" especially when the "person who made the termination decision is in the same protected class as the plaintiff"); *Matthews v. Huntington*, 499 F. Supp.2d 258, 267 (E.D.N.Y. 2007) (fact that decision makers were in same protected class as Plaintiff undermines the inferences of

---

[5]  Indeed, Plaintiff does not contend that Barry Connell discriminated against him because of his age. (Pl. Dep. at 85-86, attached to Wigdor Reply Aff. at Exhibit 1.)

8

discriminatory animus). It is simply absurd to believe that the UBSFS clients can provide any evidence or testimony that would overcome this presumption.

Finally, the utter lack of any evidence to support Plaintiff's claims of discrimination demonstrates that the subpoenas issued to UBSFS' clients are a last ditch effort to harass Defendants' clients.[6] Indeed, Plaintiff admitted that neither Mr. Reichert nor Mr. Connell ever made any age-based comments towards Plaintiff. (Pl. Dep. at 74, attached to Wigdor Reply Aff. at Exhibit 1.) Moreover, Plaintiff admitted that throughout the investigation and through the resignation of his employment, he never complained of age discrimination. (Pl. Dep. at 59:2-12, 214:14-19, 216:2-7, attached to Wigdor Reply Aff. at Exhibit 1.) Indeed, the attorney representing Plaintiff throughout the investigation and negotiation of the retiring broker agreement never once raised an allegation of age discrimination. (Wigdor Aff. at Exhibit 11.)

In light of this evidence, it is clear that Plaintiff cannot support his claims of discrimination or retaliation, and that the subpoenas are nothing more than a fishing expedition. Plaintiff should not be permitted to abuse the discovery process to continue his interference with Defendants' business and harassment of Defendants' clients.

## II. DEFENDANTS HAVE STANDING TO OPPOSE THE HARASSING SUBPOENAS ISSUED TO THE UBSFS CLIENTS

In a desperate effort to overcome the utter lack of relevance of the subpoenas, Plaintiff argues that Defendants lack standing to challenge the overly broad and harassing subpoenas issued to the UBSFS' clients. *See* Pl. Br. at 6-8. Indeed, Plaintiff is forced to make such an empty claim to divert the Court's attention from the obvious fact that the subpoenas seek information that he already has and otherwise is patently irrelevant to his claims. However, as

---

[6] Finally, the depositions or information from the UBSFS clients cannot possibly lead to discovery of admissible evidence regarding the counterclaims. Indeed, Plaintiff has admitted to all of the misconduct at issue in the Counterclaims. Pl. Dep. at 127:4-24, 128:22-130:5, 257:10-258:14, attached to Wigdor Reply Aff. at Exhibit 1.)

9

the Court recognized at the conference held on January 16, 2008, Defendants have a legitimate interest in protecting their clients from harassment, and to protect against the resulting damage to their business.[7]  As such, Defendants have standing to object to these subpoenas, particularly where these subpoenas are seeking voluminous information that have no relevance to the main issues in this case.  *See Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) (party had standing to quash third party subpoena duces tecum where requested information was "not only voluminous, but also they had no relevance to the main issues in the case").

      The harassing purpose behind the overly broad subpoenas is further demonstrated by Plaintiff's defiance of the Court's stay order.  Indeed, as the Court is aware, Plaintiff served the subpoenas on UBSFS' clients while the stay order was in effect, without regard for the imminent harm to UBSFS' business interests that were conveyed to the Court and Plaintiff's counsel during the conference on January 16, 2008.  In light of these facts, Defendants have standing to move to quash the subpoenas and for this reason, as well as the reasons detailed above, the subpoenas should be quashed.

## CONCLUSION

      In light of the foregoing, as well as Defendants' initial moving papers, Defendants' Motion to Quash Plaintiffs' Subpoenas issued to UBSFS clients, should be granted in its entirety, along with the reasonable expenses and attorneys' fees, and Plaintiff's Motion to Enforce should be denied.

---

[7]    Indeed, the Court issued an immediate stay of the subpoenas. (The Order is attached to Wigdor Reply Aff. at Exhibit 13.)

Dated: New York, New York           THOMPSON WIGDOR & GILLY LLP
       April 16, 2008


                                    By: _____/s/_____
                                         Douglas H. Wigdor (DW-9737)
                                         Andrew S. Goodstadt (AG-2760)
                                         Jordan K. Merson (JM-7939)

                                    350 Fifth Avenue, Suite 5720
                                    New York, NY 10118
                                    Telephone:  (212) 239-9292
                                    Facsimile:   (212) 239-9001

                                    Counsel for Defendants/Counterclaim Plaintiffs UBS Financial Services, Inc., Thomas Reichert and Barry Connell