UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MICHAEL GRAUER,

       Plaintiff,

       -against-                                    07-CV-5450 (LAP/DCF)

UBS FINANCIAL SERVICES, INC.,
THOMAS REICHERT, and BARRY CONNELL,

       Defendants.
------------------------------------------------------------x

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH THIRD PARTY SUBPOENAS**

Janice Goodman (0487)
Law Offices of Janice Goodman
275 Seventh Avenue, Suite 2300
New York, NY 10001
(212) 869-1940

To:

    Douglas H. Wigdor, Esq,
    Thompson, Wigdor & Gilly, LLP
    Empire State Building
    350 Fifth Avenue, Suite 5720
    New York, NY 10118
    212-239-9292

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

POINT I    DEFENDANTS REFUSAL TO ALLOW THE DEPOSITIONS OF
           SOME FEW OF THEIR CLIENTS REFLECTS AN OUTRAGEOUS
           ABUSE OF THE DISCOVERY PROCESS .............................................................. 2

POINT II   PLAINTIFF SHOULD BE ALLOWED DISCOVERY TO FIND FACTS THAT
           MAY LEAD TO SUPPORT OF HIS CLAIMS AND DEFENSES ............................ 4

           A. Connell And Grauer Are Similarly Situated But Were
              Treated Differently ............................................................................................. 7

           B. The Fact That the Decision Maker Is In The Protected Age Category
              And Is The Person Who Hired Grauer Is Not Determinative Of The
              Underlying Issue Of Age Discrimination and Certainly Not Relevant
              on this Motion to Quash ..................................................................................... 8

           C. Defendants Were On Notice Of Plaintiff's Disparate
              Treatment Complaint ....................................................................................... 10

           D. Plaintiff's Alleged Admissions Are Based On Defendants Omission
              Of Significant Parts Of The Records ............................................................... 10

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page

## Cases

*Carlton v Mystic Transp.*
202 F. 3d 129 (2d Cir.2000)..................................................................................9

*Chambers v TRM Copy Centers Corp.*
    43 F 3d 29 (2d Cir. 1994).................................................................................6

*Cruz v Coach Stores, Inc.*
    202 F. 3d 560 (2d Cir. 2000)...........................................................................10

*Curley v St. John's University*
    19 F. Supp. 2d 181 (S.D.N.Y. 1988)................................................................9

*Feingold v New York*
    366 F. 3d 138 (2d Cir. 2004)............................................................................9

*Golia v Leslie Fay Co., Inc.*
    2003 WL 21878788 (S.D.N.Y. Aug. 7, 2003)..................................................9

*Griffith v The United States of America*
    2007 WL 1222586 (S.D.N.Y. 2007).................................................................2

*In re Subpoena Issued to Dennis Friedman*
    350 F. 3d at 69...................................................................................................2

*Kadas v MCI Systemhouse Corp.*
    255 F. 3d 351 (7th Cir. 2001).............................................................................9

*Oncale v Sundowner Offshore Servs., Inc.*
    523 U.S. 75 (1998)............................................................................................9

*Ramseur v Chase Manhattan Bank*
    865 F. 2d 460 (2d Cir. 1989).............................................................................6

*Rosen v Thornburgh*
    928 F. 2d 528 (2d Cir. 1991).............................................................................6

*Wexler v White's Fine Furniture Inc.*
    317 F. 3d 564 (6th Cir. 2003)..................................................................................9

*Zuffante v Elderplan, Inc.*
    2004 WL 744858 (S.D. N.Y, March 31, 2004)........................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MICHAEL GRAUER,

           Plaintiff,

    -against-                                   07-CV-5450 (LAP/DCF)

UBS FINANCIAL SERVICES, INC.,                JURY TRIAL DEMANDED
THOMAS REICHERT, and BARRY CONNELL,

           Defendants.
------------------------------------------------------------x

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO QUASH THIRD PARTY SUBPOENAS

In their recent submission, Defendants completely abandon their original arguments to quash the third party subpoenas under the case law regarding discovery, and rather attempt to induce this Court to render, *sub rosa*, a summary judgment ruling prior to the completion of discovery. When the record is read as a whole, it will be evident that the so called "admissions" and Defendants' claim that "Plaintiff cannot support his claims of discrimination or retaliation" raise hotly contested issues which will not be agreed to on summary judgment. It would be premature for the Court to prejudge those contested issues on this discovery motion. Rather under the well established law of this Circuit, discovery should be freely granted so that both parties have equal footing once the predicted summary judgment motions are made.

> The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long "accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark" Indeed, the rules provide for the taking of discovery, including by oral depositions, "regarding any matter not

privileged, that is relevant to the claim or defense of any party" and that "[r]elevant information need not be admissible." Moreover, the rules generally do not place any burden on parties to justify their deposition and discovery requests. *In re Subpoena Issued to Dennis Friedman*, 350 F. 3d at 69.

"Where relevance is in doubt, the district court is to be permissive." *Griffith v The United States of America,* 2007 WL 1222586 * 2 (S.D.N.Y. 2007) (citations omitted).

**POINT I  DEFENDANTS REFUSAL TO ALLOW THE DEPOSITIONS OF SOME FEW OF THEIR CLIENTS REFLECTS AN OUTRAGEOUS ABUSE OF THE DISCOVERY PROCESS**

Defendants should not be allowed to deny plaintiff access to clients who may well have evidence to support his claims or defenses, while at the same time relying precisely on these clients in their action against Plaintiff, and defense against his complaint. On May 5, 2008 Defendants Amended their Rule 26(a)(1) Statement and continue to identify persons with knowledge to support their defenses and countersuit as:

**ANY AND ALL CLIENTS OF UBSFS IN ACCOUNTS DESIGNATED BY FH77 AND FH55.**[1] (Emphasis added)

Among other things, Defendants claim that all of these clients have information regarding "trades made by Plaintiff on their behalf." Attached herewith as Exh. A., p 9. It is the height of audacity for Defendants to continue to argue that Plaintiff cannot depose those clients who Defendants themselves identify as having relevant information. Yet for 5 months now they have prevented Plaintiff from obtaining the testimony of these clients and perpetrated an outrageous deceit on this Court by its continued claim that the clients testimony is of no relevance, and in so doing

---

[1] These are the accounts Mr. Grauer shared with Connell and Larry McNeill, and include the subpoenaed witnesses.

have unfairly besmirched the reputation of Plaintiff and his Counsel by claiming there was no purpose to the requested depositions but to harass.

As we have previously argued, and Defendants' denied, Defendants' countersuit contradicts its claim that there is no relevancy to the witnesses testimony. In ¶ 6 of their Counterclaims (p13) Defendants assert that Plaintiff engaged in "unauthorized discretionary trading" and "In particular, Grauer bought and sold securities for his client accounts without speaking to his clients and obtaining their specific authorization to place the trades prior to doing so." Although there may be others, the specific clients that have been identified are the five (5)[2] whom he seeks to depose, because UBS submitted the records of these five clients to FINRA as evidence of unauthorized trading, as well as their complaints. Therefore, Defendants made their testimony relevant to Plaintiffs' defense against their countersuit. Defendants cannot now say that Plaintiff has no right to seek evidence from these clients to contradict their factual allegations asserted in ¶ 6 of their countersuit.

Even on this motion Defendants concede the relevance of the subpoenaed witnesses. They rely on the fact that the witnesses filed complaints against Grauer, not Connell, as evidence of why there was no cause to investigate anyone but Grauer. (Def. Br. P 5) This argument again puts those witnesses testimony into contention. All we have is Reichert's claim about complaints made--there are no statements from the witnesses. Since their complaints are relied upon by Defendants, Plaintiff should be entitled to depose them to determine the circumstances of their complaint and just how they came about and what questions, if any, they were asked about Connell.

---

[2] Only four are now in issue since Eugene Chernick has passed away.

-3-

Moreover, Defendants claim that a basis for its investigation of Grauer and not Connell for unauthorized trading is that these were "Grauer's clients" or the persons on whose behalf he entered trades, ignoring totally Plaintiff's statement that both made phone calls to clients although he may have placed the trade based on authorization passed on to him by his partner. Indeed, Defendants rely heavily on the incident which ignited the investigation into Grauer which was the discovery that Ellen Lawrence was out of the country when a trade on her account was made. Yet there is ample evidence to show that Lawrence relied heavily on Connell as her financial advisor and indeed the postcard sent by her was to "Barry and Mike" and when she called from Europe, because her credit card was not working, she called Barry Connell or possibly Sherry Swenson. Reichert Tr. P411.[3] At no time is there any claim that she called Grauer. Evidence from Ms. Lawrence regarding her relationship with Connell; how her account was managed, whether un-authorized trades were made, and whether she was ever questioned about the trade could support Plaintiff's claim of disparate treatment. It also could produce evidence of his claim that Connell and Reichert defamed him to the witness.

**POINT II   PLAINTIFF SHOULD BE ALLOWED DISCOVERY TO FIND FACTS THAT MAY LEAD TO SUPPORT OF HIS CLAIMS AND DEFENSES**

The theory of Plaintiff's claim is simple: he was a financial advisor in the Pearl River branch of UBS and partnered with Barry Connell on what is called by UBS a "split number." In other words, the two brokers entered into an agreement whereby they jointly managed the accounts of the partnership clients and shared all commissions equally. Neither had a separate book of business. This was a common practice at UBS. For example, Reichert had several split

---

[3] Cited Reichert Tr. pages are attached as Exh. A. to counsel's affirmation submitted under seal.

number accounts with 2 other brokers. Reichert Tr. 248. The Grauer/Connell partnership under split number 77 was well known to management. Grauer Tr. 574-582,[4] Reichert Tr. 248.

On May 31, 2006 Plaintiff was called into an investigatory meeting at which there were accusations regarding placing of trades without specific prior authorization of the clients. In response, Plaintiff told the investigators, attorney Caroline Hall and Thomas Reichert, Branch Manager, that he and Connell worked jointly, they always tried to reach the client first and sometimes he put in the trades based on calls that Connell made and sometimes the reverse. Grauer Tr. 861-869. He clearly put the investigators on notice that these were joint endeavors, yet there was no investigation of Connell, a substantially younger man. Grauer Tr. 876-877 Defendants were also put on notice, in October 2006 through Plaintiff's submission to the NASD where his lawyers clearly stated that there was joint responsibility between Grauer and Connell for all contested transactions. Goodman Aff. Exh. C, and Grauer Tr. 861-869

When it became clear to Plaintiff that he was being set up for dismissal and that only he was being singled out for adverse action while no action was being taken against his younger colleague, he retained counsel to attempt to resolve the issues. There was a month long negotiation between his attorney and counsel for UBS which included a demand that Plaintiff "retire" and sign a "retirement agreement" whereby he would waive any claim of discrimination and agree not to compete for four (4) years, in return for receiving commissions from some small percentage of his former clients. Plaintiff rejected the proposal and resigned on July 24, 2006 under the threat of termination. The retaliatory acts took place some 4 months later when

---

[4] Cited Grauer transcripts are affixed to Goodman Affirmation as Exh. B

Defendants sought to prevent Plaintiff from working by soliciting complaints from former joint clients.

Plaintiff has no smoking guns to prove his discrimination and retaliation claims, but like most victims of discrimination his case must rest on the weight of circumstantial evidence. "Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination ...is usually constrained to rely on circumstantial evidence." *Chambers v TRM Copy Centers Corp.*, 43 F 3d 29,37 (2d Cir. 1994); See, *Rosen v Thornburgh*, 928 F. 2d 528,533 (2d Cir. 1991); *Ramseur v Chase Manhattan Bank*, 865 F. 2d 460,464 (2d Cir. 1989). Plaintiff should be allowed through discovery to gather the circumstantial evidence which he believes exists including:

Evidence from clients such as Ellen Lawrence that she worked equally with Connell and Grauer and that Connell would put in trades without first speaking with her and that when the alleged unauthorized trade on her account was uncovered no one ever questioned her about Connell's role in the process, but focused only on Grauer;

Evidence from client Louis Magrino that he never complained about unauthorized trading although his complaint was submitted by UBS to FINRA as evidence of such violation and that his complaint was solicited and he was offered money to stay with UBS and that Connell defamed Grauer to him;

Evidence from client Scott Chernick regarding the solicitation of his complaint while Plaintiff was still employed by UBS, but under investigation, and evidence from him about his relationship to Barry Connell as his financial advisor, and dissatisfaction of the handling of his account and his families' accounts by UBS, Reichert and Connell, though no action has been

-6-

taken against either of them.

Evidence from Peter Magrino that the trades made on his account were not unauthorized; that he too worked substantially with Connell and that his complaint was solicited.

### A.   Connell And Grauer Are Similarly Situated But Were Treated Differently

Connell and Grauer are clearly similarly situated employees: they report to the same supervisor (Reichert); they are subject to the same standards of performance (they are both registered financial advisors subject to security industry and UBS rules); they had the same job description; they earned the same money. *Zuffante v Elderplan, Inc.*, 2004 WL 744858 * 6 (S.D. N.Y, March 31, 2004). Further, Plaintiff alleges that they both engaged in the same activities as relates to trading, and that he put Defendants on notice of this claim at the investigatory conference. Yet there was no attempt to question Connell at the time or to dig into his trading practices. The joint clients of Grauer and Connell, who Plaintiff seeks, to depose are precisely the individuals who could give corroborating testimony to this factor, which is precisely why Defendants seek to prevent Plaintiff from ascertaining the testimony and corroboration.

Missing the mark is Defendants' argument that since they had no knowledge of any misconduct by Connell, he was not similarly situated to Grauer. The disparate treatment claim is that although UBS was aware of the shared responsibility on the split number they intentionally refused to investigate Connell to determine what role he played vis-a-vis the clients. There was no universal investigation, but from the start the sole focus was on Grauer. Had they investigated they would have learned the truth of Grauer's allegations. Even in the face of one of the investigators' admission that it is "impossible to decipher who made what

-7-

trades" UBS continued to only search out evidence that would implicate Grauer. See, Goodman Aff. April 7, 2008 Exh. B.[5]

To get around the fact that they never interviewed Connell in reference to the disputed trades or the working relationship with Grauer, Defendants claim they reviewed all the trades in the split number so they were in fact investigating everyone. Not true. What they investigated were the names of clients that Plaintiff supplied in the course of the investigation into Grauer and when they dug down they were only looking to see who put in the trade. They never investigated Grauer's claim that he would put in trades based on Connell telling him that the client was called. Cohen Tr. 79-80 [6]

The intentional discrimination is evidenced by UBS' refusal to conduct a fair and thorough examination of both financial advisors to determine (1) were the trades unauthorized; (2) if they were, was there joint responsibility. At all times the investigation focused on Grauer and only the trades that he put in and the clients whose names he supplied.

**B.  The Fact That the Decision Maker Is In The Protected Age Category And Is The Person Who Hired Grauer Is Not Determinative Of The Underlying Issue Of Age Discrimination and Certainly Not Relevant on this Motion to Quash**

As part of its covert summary judgement motion that Defendants are foisting upon the Court under the guise of a motion to quash, Defendants mistakenly argue that the potential evidence to be gained from the witnesses cannot be relevant because Defendant Reichert hired Plaintiff when Plaintiff was 52 years old, and Reichert himself is in the protected age group.

---

[5] Plaintiff 's evidence supporting this contention can be found in the original submission. Plaintiff's Brief p.4, Goodman Aff. Exh. B.

[6] Cited Cohen transcript are affixed to Goodman Aff. as Exh. D.

-8-

First, Defendants continue to obfuscate the issue by focusing only on the relevance to Plaintiff's discrimination claim, ignoring completely that they put the factual issues relating to these witnesses into contention in their countersuit.

The fact that the decision maker is a member of the same protected class does not preclude a finding of discrimination. The law recognizes that people are capable of discriminating against other people in their protected class. The Supreme Count has "rejected any conclusive presumption" that an employee will discriminate against members of their own age. *Oncale v Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78, 79 (1998); *Feingold v New York,* 366 F. 3d 138, 155 (2d Cir. 2004); *Wexler v White's Fine Furniture Inc.,* 317 F. 3d 564, 574 (6th Cir. 2003); *Kadas v MCI Systemhouse Corp.,* 255 F. 3d 351, 361 (7th Cir. 2001) (rejection of same group inference in race discrimination applies with equal force to age discrimination proof); *Curley v St. John's University* 19 F. Supp. 2d 181, 193 (S.D.N.Y. 1988); *Golia v Leslie Fay Co., Inc.,* 2003 WL 21878788 at *5 (S.D.N.Y. Aug. 7, 2003).

Nor is the same actor defense dispositive even on a summary judgement motion, and certainly not on the issue of relevancy to obtain discovery. Moreover, the argument is particularly weak in this case. Defendants' claim that there can be no inference of discrimination because Reichert hired Grauer 8 years earlier when he was 52. As the Second Circuit has held, the same actor inference "is less compelling when a significant period of time elapses between hiring and firing." *Carlton v Mystic Transp.*, 202 F. 3d 129,138 (2d Cir.2000) (citations omitted) Here the lapse of 8 years between the hiring and discharge negates any inference, particularly on this discovery motion in which Plaintiff seeks factual information to

negate Defendants countersuit as well as to support his own claims of discrimination and retaliation.

### C.  Defendants Were On Notice Of Plaintiff's Disparate Treatment Complaint

Plaintiff has testified consistently that when he was called into the investigatory meeting he clearly told the investigators that he and Connell shared the responsibilities and that either he or Connell would call the clients and that one might put in trades based on the client conversation that the other had. Grauer Tr. 876-877. He is clearly indicating that to hold him singly responsible for the joint acts of he and his partner evidences disparate treatment. Such notice is a protected activity. Moreover, the claim was reinforced by Counsel's letter to NASD Goodman Aff. Exh. C. A Plaintiff's opposition to an employment discrimination violation need not rise to the level of a formal complaint for it to be protected under retaliation provisions. *Cruz v Coach Stores, Inc.*, 202 F. 3d 560,566 (2d Cir. 2000). The fact that Defendants negotiated with Plaintiff's Counsel over a "retirement" plan implicitly acknowledges Defendants' understanding that there was a threat of a discrimination action, absent a settlement.

### D.  Plaintiff's Alleged Admissions Are Based On Defendants Omission Of Significant Parts Of The Records

Without merit is Defendants' claim that they had a basis to investigate Plaintiff because he "admitted" to making unauthorized trades, and therefore the evidence from the witnesses cannot be relevant to prove discrimination. Once again that argument does not address the fact that the information from these witnesses was put in contention by Defendants in their countersuit.

Moreover, Defendants fail to present the entire record, thus distorting the testimony. For example, Defendants cite page 107-109 of Grauer's deposition to support the proposition regarding admissions, but they neglect to incorporate the entire testimony starting at page 106 where Plaintiff testifies quite clearly that he and Connell shared responsibilities; that they tried to call clients prior to every transaction, but he could not swear that there never was a possibility that a client was not reached. But he concludes this was a shared problem and responsibility with his partners. Grauer Tr. 106. Defendants cite the Transcript at p 114-115 for the proposition that Plaintiff did not view his treatment as discriminatory, but omits the continuation at p116-117 which clearly raises the issue of discrimination.

No credence should be given to Exh. 13 to the Wigdor Affirmation which Defendants submit as proof of an admission relating to unauthorized trading. First, that document which was produced by UBS has never been authenticated and, therefore, is not admissible and cannot be relied upon.

Second, even if authenticated, this represents, after acquired evidence. On information and belief, it is not a document that Defendants had uncovered from their computer system until the onset of this litigation. Therefore, it could not have been a document relied upon at the time UBS decided to investigate Grauer and not Connell.

Third, and most significantly, if authentic and if UBS had this document at the time of the investigation, then they were certainly placed on notice that Connell was complicit in any alleged unauthorized trading. The email talks about how "we" meaning Grauer and **his partners**, did not necessarily call each client before each trade. There can be no question but

that Grauer is implicating Connell in any alleged unauthorized trading, and clearly Defendants were on notice and had no excuse for not investigating Connell as well as Grauer.

## CONCLUSION

For the above stated reasons, and those stated in Plaintiffs's initial Memorandum of Law in Opposition to Defendants Motion to Quash, Plaintiff requests that Defendants' Motion to Quash be denied in its entirety and that the witnesses be directed appear for their deposition at a time and location most convenient to them.

Dated: New York, New York
       May 13, 2008

**LAW OFFICES JANICE GOODMAN**

By: _____
Janice Goodman (0487)
275 Seventh Avenue, Suite 2300
New York, New York 10001
(212)869-1940

UBSFS, (b) relevant events that occurred at UBSFS, (c) trades made by Plaintiff during his employment with UBSFS, (d) the circumstances surrounding the resignation of Plaintiff's employment, (e) the claims and allegations in the Complaint, including the damages claimed therein, and (f) the claims and allegations in the counterclaims.

17. Henry Westphalen
c/o Thompson Wigdor & Gilly LLP
350 Fifth Avenue, Suite 5720
New York, NY 10118

Henry Westphalen may have discoverable information concerning (a) Connell's employment background, performance and experience in the industry as well as with UBSFS, (b) relevant information about Connell's accounts, (c) the claims and allegations in the Complaint, including the damages claimed therein, and (d) the claims and allegations in the counterclaims.

18. Any and all clients of UBSFS in accounts designated by FH77 and FH55

The UBSFS' clients in accounts designated by FH77 and FH55 may have discoverable information concerning (a) trades made by Plaintiff on their behalf; (b) attempts by Plaintiff to solicit their business after the resignation of Plaintiff's employment with UBSFS; and (c) defamatory, libelous and slanderous statements made by Plaintiff after the resignation of Plaintiff's employment with UBSFS.

**Disclosure B:**

A copy of, or description by category and location, of all documents, data compilations, and tangible things that are in Defendants' possession, custody, or control that Defendants may use to support their defenses and/or counterclaims.